159 N.J. Super. 249 (1978)
387 A.2d 1214
KENDALL PARK CHAPTER OF DEBORAH, A SEPARATE CHAPTER OF THE DEBORAH HOSPITAL FOUNDATION, PLAINTIFF-APPELLANT,
v.
CITY OF NEW BRUNSWICK, A MUNICIPAL CORPORATION, WILLIAM J. CAHILL, CITY CLERK OF THE CITY OF NEW BRUNSWICK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 11, 1978.
Decided May 1, 1978.
*250 Before Judges LYNCH, KOLE and PETRELLA.
Mr. Jack Pincus argued the cause for appellant (Messrs. Pincus & Gordon, attorneys).
Mr. Joseph E. Sadofski, Assistant City Attorney, argued the cause for respondents (Mr. Richard S. Rebeck, attorney).
The opinion of the court was delivered by KOLE, J.A.D.
The issue involved in this appeal is the validity of a municipal ordinance restricting the issuance of bingo licenses, pursuant to the State Bingo Licensing Law, N.J.S.A. 5:8-24 et seq. (hereafter sometimes referred to as "the act"), to organizations having a legal domicile or bona fide situs within the municipality.
Plaintiff, with an office in a neighboring town but an otherwise qualified organization, was denied a bingo license by the City of New Brunswick on the basis of the following recently enacted ordinance:

7-8.2 Regulations.

* * * * * * * *
e. There shall be no more than two (2) licenses issued for any one day, as the Municipal Council shall issue at the ratio of one per each 20,000 city residents as established by Federal census figures; also, the licenses shall be issued to organizations who shall have a legal domicile or bona fide situs within the City of New Brunswick, and only on application and special circumstances shown, shall the Municipal Council deviate from the afore-mentioned policy and issue licenses to organizations outside of the City of New Brunswick. *251 Thereafter plaintiff filed a complaint in lieu of prerogative writs challenging the ordinance and seeking to overturn the denial. The trial judge held the ordinance valid. This appeal followed.
Plaintiff contends that the ordinance is invalid. It asserts, among other grounds for invalidity, that the amended regulation is contrary to state law, since the State has preempted the field of bingo games in the area here involved. We agree.
Municipalities are granted broad police powers over matters of local concern and interest. N.J.S.A. 40:48-1 and 2. Laws are to be liberally construed in their favor. N.J. Const. (1947), Art. IV, § VII, par. 11. However, it is equally clear that a municipality may not make laws in a field which has been preempted by the Legislature. Overlook Ter. Management v. West New York Rent Control Bd., 71 N.J. 451, 461 (1976); Summer v. Teaneck, 53 N.J. 548, 554-555 (1969).
In 1953 the State Constitution was amended to permit the playing of games of chance known as "bingo" and "raffles" in municipalities in which a majority of the voters approved of such gambling. Allendale Field and Stream Ass'n v. Legalized Games, 41 N.J. 209, 211 (1963). N.J. Const. (1947), Art. IV, § VII, par. 2, as amended in 1972, provides in pertinent part:
It shall be lawful for bona fide veterans, charitable, educational, religious or fraternal organizations, civic and service clubs, senior citizen association or clubs, volunteer fire companies and first-aid or rescue squads to conduct, under such restrictions and control as shall from time to time be prescribed by the Legislature by law, games of chance of, and restricted to, the selling of rights to participate, and the awarding of prizes, in the specific kind of game of chance sometimes known as bingo or lotto, * * * when the entire net proceeds of such games of chance are to be devoted to educational, charitable, patriotic, religious or public-spirited uses, * * * in any municipality, in which a majority of the qualified voters, voting thereon, at a general or special election as the submission thereof shall be prescribed by the Legislature by law, shall authorize the conduct of such games of chance therein. [Emphasis supplied]
*252 Thus, in dealing with bingo the Constitution makes it mandatory upon the Legislature to prescribe restrictions and controls. Daughters of Miriam Home v. Legalized Games, etc., 42 N.J. Super. 405, 409 (App. Div. 1956). In pursuance of the constitutional mandate, the Legislature created a Legalized Games of Chance Control Commission (Commission), N.J.S.A. 5:8-1, and enacted the Bingo Licensing Law, N.J.S.A. 5:8-24 et seq. In imperative terms the Commission has the following duty:
It shall be the duty of the commission to supervise the administration of the Bingo Licensing Law * * * and to adopt, amend and repeal rules and regulations governing the issuance and amendment of licenses thereunder and the holding, operating and conducting of games of chance under such licenses * * * which shall have the force of law and shall be binding upon all municipalities issuing licenses under * * * said laws and upon all licensees thereunder * * * to the end that such licenses shall be issued to qualified licensees only and that said games of chance shall be fairly and properly conducted for the purposes and in the manner in said laws prescribed and to prevent the games of chance authorized to be conducted by said laws from being conducted for commercial purposes instead of for the purposes authorized in said laws, and in order to provide uniformity in the administration of said laws throughout the State, the commission shall prescribe forms of applications for licenses, licenses, amendment of licenses, reports of the conduct of games and other matters of incident to the administration of said laws. [N.J.S.A. 5:8-6]
Rules and regulations promulgated appear in N.J.A.C. 13:47-1.1 et seq. The Commission also must continuously study the operation of the licensing laws and the administration thereof by the municipalities of the State, and file reports at least annually. N.J.S.A. 5:8-12, 13 and 23. In this regard municipalities in which the act is adopted must also file yearly reports of bingo activities and, among other things, include "any recommendations for improvement of said laws or the administration thereof, which the governing body of the municipality shall deem to be desirable." N.J.S.A. 5:8-22. The filing is with the Commission.
*253 The Legislature, in adopting the Bingo Act, followed the qualifications for licensing set out in the constitutional amendment. It provided that it shall be lawful for a municipality adopting the act to license bona fide organizations, as enumerated in the amendment, to hold and operate bingo games, with the net proceeds being devoted to educational, charitable, patriotic, religious or public-spirited uses. When so licensed an organization may "hold, operate and conduct such games of chance * * * pursuant to this act and such license, and under such conditions and regulations for the supervision and conduct thereof as shall be prescribed by rules and regulations duly adopted from time to time" by the Commission "not inconsistent with" the act. N.J.S.A. 5:8-25.
Applications for a license are to be (1) filed with the clerk of the municipality and (2) provide certain information set out in the act on forms prescribed by the Commission in its rules and regulations. N.J.S.A. 5:8-26; N.J.A.C. 13:47-3.1 and 16.4.
The qualifications for licensees to conduct bingo games are specifically set forth in the act. N.J.S.A. 5:8-26, 5:8-27. There is no statutory provision restricting the granting of such licenses to applicants with a legal domicile or bona fide situs within a municipality, or authorizing a municipality to adopt any such restriction.
The governing body of the municipality must make an investigation of each applicant and the merits of each application and determine whether the applicant is duly qualified to be licensed under the act and to conduct bingo games under the provisions of the act and the governing state rules and regulations.[1] Once having found in favor of the applicant *254 with respect to the satisfaction of the statutory criteria, the municipality "shall issue a license to the applicant." N.J.S.A. 5:8-27. Such action is mandatory. There is no room for the municipality's providing any additional qualifications for the grant of a license, whether by ordinance or otherwise. Cf. Mogolefsky v. Schoem, 50 N.J. 588, 599 (1967).
The act provides in specific detail how the games shall be run and a licensee operate them. Frequency of games by a licensee, admission fees, prizes to be awarded, advertising of games and the like, are all covered. N.J.S.A. 5:8-33 to 36. The rules promulgated by the Commission provide for the types of arrangements of numbers on a bingo card, the manner in which winners shall be determined and declared and the maximum numbers of games on one occasion. N.J.A.C. 13:47-7.11, 7.13, 7.14, 7.15 and 7.16. Games may not be conducted on Sundays, unless specifically authorized by local ordinance. Here a municipality is expressly authorized to enact an ordinance concerning bingo. N.J.S.A. 5:8-31. Renters of premises not owned by a bona fide organization must be licensed, and they are regulated by the Commission. N.J.S.A. 5:8-49.3 and 49.4; Daughters of Miriam Home v. Legalized Games, etc., supra.
From the above review of the constitutional amendment legalizing bingo, the act passed pursuant to the amendment and the rules and regulations promulgated by the Commission, it is abundantly clear that the State intended to and did preempt the field of bingo games, at least as to the qualifications of licensees. The state scheme is so pervasive and comprehensive that the coexistence of municipal regulations that differ therefrom in that respect are precluded. In this connection we note that the act contemplates that the laws regarding bingo and its administration are to be uniform *255 throughout the State. N.J.S.A. 5:8-6. Accordingly, any local law in the form of an ordinance, as here, attempting to provide an additional prerequisite to licensure, that of local domicile, situs or residency, is invalid as contrary to state law. Overlook Ter. Managmt. v. West New York Rent Control Bd., supra at 71 N.J. 461-462; Summer v. Teaneck, supra at 554-555.
The trial judge erred in holding that the municipality's authority to adopt a legal domicile or bona fide situs requirement for licensees may be implied from its power and duty, under the act, to control and supervise all games conducted under the license "to the end that the same are fairly held, operated and conducted in accordance with the provisions of such license, the rules and regulations promulgated by the control commission and the provisions of this act * * *." N.J.S.A. 5:8-30.
The judge reasoned that since a municipality has the authority to control and supervise bingo games, it may limit the issuance of licenses within its enforcement capabilities. He stated:
Bingo is gambling. It is in the public welfare that those games be effectively regulated, controlled and supervised. A municipal governing body can more effectively exercise such control over local organizations who are better known to it rather than those whose residency is outside the municipality. Local organizations are not apt to pose serious enforcement problems; their residency creates in each a pride and interest in the betterment of their municipality.
It cannot be said that the residency requirement in the defendants' [sic] amended ordinance does not have a rational basis in the furtherance of its public welfare.
I, therefore, conclude that the residency requirement in the defendant's amended ordinance above cited is a valid exercise of its police power.
The police power standard invoked by the trial judge may be proper in another context. However, it is plainly inappropriate in the area of qualifications for a bingo license, which is the subject of both a constitutional provision and comprehensive preemptive legislation at the state level.
*256 It is the Legislature, not a municipality, that is expressly empowered to regulate bingo as gambling with respect to qualifications of licensees. If the delegation of supervisory power to municipalities proves unworkable, a municipality may take action other than providing additional requirements for licensing. The voters of a municipality have the choice of accepting the act or rejecting it, and may vote on the issue at least every three years. N.J.S.A. 5:8-42 to 49. However, once the act is in force it is the total law as to the persons to whom a bingo license may be issued. The State has not provided any residency requirements and a qualified organization may be licensed in any municipality in which the act is in force. If this is unsatisfactory, a participating municipality may point out the problems to the Commission or the Legislature, or its citizens may vote the act out of the community.
We note that where the Legislature has been willing to give additional licensing authority to the municipality, it has done so. Thus, if a municipality wishes games to be conducted on Sunday, it must adopt an ordinance to that effect. N.J.S.A. 5:8-31. There is no comparable authorization with respect to residency or similar requirements for licensing.
The trial judge also relied on the then pending Senate Bill 3006, introduced January 11, 1977. That would have amended the act by providing an additional qualification for a licensee  that its principal office is within the municipality or its principal operations are conducted therein. The judge concluded that "the purpose of this bill is to make clear that which is otherwise implicit in the Act." We note that the bill was not enacted.
No controlling inference as to legislative intent should be drawn from pending amendatory bills that have not been adopted by the Legislature. See Donaldson v. North Wildwood Bd. of Ed., 65 N.J. 236, 240-241 (1974). Nevertheless, if any effect is to be given to this bill on the issue before us, we are satisfied that it recognizes the lack *257 of municipal authority to adopt ordinances engrafting local residency, domicile or situs as an additional requirement for bingo licensing. The statement to the bill supports this conclusion:
This bill limits the operation of bingo games to the respective municipality in which the applicant maintains its principal office or in which its principal operations are conducted. [Emphasis supplied]
The ordinance in question is invalid to the extent that it endeavors to impose a residency requirement for the issuance of a bingo license by requiring that licenses be issued only to organizations with a legal domicile or bona fide situs within the city, except where special circumstances are shown. That portion of the ordinance is invalid since it is concerned with a matter preempted by the State. In view of this disposition of the appeal, we need not consider the other issues raised by the parties or decided by the court below.[2]
The judgment below is reversed and should be modified by the trial judge to conform to the conclusions set forth in this opinion.
NOTES
[1] N.J.S.A. 5:8-27 authorizes the municipality to investigate the qualifications of each applicant and the merits of each application to determine whether "the applicant is duly qualified to be licensed under this act to hold, operate and conduct games of chance under the provisions of this act and the rules thereof in the municipality." (Emphasis supplied). We construe the emphasized language as referring to rules adopted by the commission. We do not agree with the municipality that this provision contemplates the adoption of municipal regulations with respect to qualifications of applicants for licenses.
[2] We note that the trial judge also considered the portion of the ordinance that limited the number of licenses for any one day to two. He held that that provision was valid, substantially for the same reasons that he gave with respect to the residency requirement  that is, that the act intended that the municipality's supervision and control over bingo be effectively exercised and that this "can be done only by limiting the issuance of licenses within the enforcement capabilities of a municipal governing body."

Since none of the parties to this appeal have taken issue with this conclusion, we do not pass upon it. Our determination in this case relates solely to the residency requirement of the ordinance.