159 N.J. Super. 539 (1978)
388 A.2d 987
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
DONALD BURNS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 18, 1978.
Decided May 22, 1978.
*540 Before Judges LYNCH, KOLE and PETRELLA.
Mr. John P. Goceljak, Assistant Prosecutor, argued the cause for appellant (Mr. Burrell Ives Humphreys, Passaic County Prosecutor, attorney).
Mr. John Jay Jamison argued the cause for respondent (Messrs. Cohen and Jamison, attorneys).
*541 PER CURIAM.
The State appeals pursuant to leave granted from an order suppressing evidence of a blood sample taken in connection with a drunk driving charge.
At the suppression hearing the only witness who testified was the arresting officer. The following are the essential facts. On March 14, 1977, at about 11:15 P.M., defendant was arrested when his auto was observed by the arresting officer "swerving around in the slow lane" and shortly thereafter "hitting the right shoulder." After stopping defendant the officer observed defendant's manner and smelled alcohol. He placed defendant in the rear seat of the patrol car with his hands "cuffed" behind him. While proceeding to headquarters, the officer noticed defendant bump his head on the window. Defendant requested to be taken to the hospital, but this request was initially denied because no injury was observed. Defendant refused to submit to a breathalyzer or any other form of testing. It was then decided that he would be taken to the hospital, where x-rays were negative. The hospital record did indicate that defendant had a contusion on his forehead. The hospital refused the officer's request to perform a blood test without defendant's consent. According to the arresting officer, defendant indicated he would comply with the officer's request to have a blood sample taken after the doctor represented in writing that he was not injured. However, even after being shown the medical report, defendant refused to permit the sample to be drawn.
After the examination at the hospital defendant was taken to the Pompton Medical Center, which was a few minutes drive from the hospital, where the licensed director took a blood sample. It is undisputed that defendant offered no physical resistance to the test and did not affirmatively consent to the test. There is no allegation that physical force was used (not considering the act of insertion of a needle). The trial judge refused to allow testimony of the *542 licensed director's qualifications or to take judicial notice[1] of his expertise as to the taking of such samples. The trial judge, in suppressing the evidence, found the search was contrary to N.J.S.A. 39:4-50.2. He implied that even though there was no physical violence, the test was taken without consent, and he seemed to emphasize the discrepancy between the officer's not noticing any injury and the hospital's finding of a contusion.
The trial judge used a concept, not of actual physical force or violence, but rather the coercive effect of defendant being handcuffed and taken from the hospital, where he had refused the test, to the medical center. However, this is not the kind of force which prohibits the use of chemical tests in a drunken driving case. State v. Macuk, 57 N.J. 1 (1970).
The trial judge erred in his interpretation of N.J.S.A. 39:4-50.2(d) when he construed that subsection to include the circumstances of being arrested for drunk driving and the ambiance of the situation. However, that section is limited to a prohibition when the chemical test or specimen is "made or taken forcibly and against physical resistance." To apply the criterion used by the trial judge of a finding of coercion from the circumstances of an arrest situation would in effect mean that the statute broadly applies to all situations and to every chemical test taken after an arrest for drunk driving, and might be argued to negate implied consent even as to the breath test. The mere fact of arrest and being handcuffed is not a sufficient showing of coercion.
Here, as in State v. Macuk, supra, N.J.S.A. 39:4-50.2, in effect when defendant was arrested (and not affected by an amendment by virtue of L. 1977, c. 29), is limited in subsection (a) to samples of the breath when speaking of *543 implied consent. Justice Hall, speaking for a unanimous court in State v. Macuk, supra, said in strong terms:
Chapter 142, importantly, struck from N.J.S.A. 39:4-50.1 the former requirement of consent to or request by the defendant for any chemical analysis or specimen with respect to driving `under the influence'. (And no such requirement was contained in N.J.S.A. 39:4-50.6 with respect to driving `while impaired'.)
Section 2 of the chapter, N.J.S.A. 39:4-50.2, is the so-called `implied consent' provision, relating only to the taking of samples of breath. It reads:
(a) Any person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood; provided, however, that the taking of samples is made in accordance with the provisions of this act and at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of section 39:4-50 of the Revised Statutes.
(b) A record of the taking of any such sample, disclosing the date and time thereof, as well as the result of any chemical test, shall be made and a copy thereof, upon his request, shall be furnished or made available to the person so tested.
(c) In addition to the samples taken and tests made at the direction of a police officer hereunder, the person tested shall be permitted to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection.
(d) The police officer shall inform the person tested of his rights under subsections (b) and (c) of this section.
(e) No chemical test, as provided in this section, or specimen necessary thereto, may be made or taken forcibly and against physical resistance thereto by the defendant.
It would appear that the provision was limited to a breath test and was made necessary because affirmative cooperation is required of the person being examined to `blow up the balloon', whereas this is not so in the case of a test by use of a blood sample. It also may be noted that the implied consent provision applied where the police officer has arrested the driver upon reasonable cause to believe that he was either `under the influence' or that his driving ability was only `impaired'. [57 N.J. at 12-13]
N.J.S.A. 39:4-50.2 was thus construed to limit such consent to breath samples because of the necessity of voluntary cooperation. There is no requirement in this State *544 for consent to the taking of physical examples such as fingerprints, photographs, bodily examinations for identifying characteristics, drunkometer tests and blood tests. They are beyond the privilege of self-incrimination because nontestimonial in character. State v. Blair, 45 N.J. 43 (1965). Nontestimonial evidence is not subject to objection on either Fourth Amendment search and seizure grounds or Fifth Amendment self-incrimination basis. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957). In State v. Macuk, supra, it was also said:
The upshot of our statutory provisions and their history and the holdings of the United States Supreme Court is this. There is a clear legal right to require a motor vehicle operator, arrested on probable cause for driving `under the influence' or `while impaired', to submit to a chemical test of bodily substances to determine the amount of alcohol in his blood, or, for that matter, to a physical coordination test. A breath test must, of course, be administered in accordance with the requirements of N.J.S.A. 39:4-50.2 and a blood test in a medically acceptable manner and environment. The latter may be used on any occasion, but will be especially useful where the person is physically unable or has refused to take a breath test. Since such tests, properly undertaken, violate no constitutional safeguard and are permissible as in any other non-testimonial situation and since our statute no longer requires consent in any situation, acquiescence is not legally significant or necessary. See State v. Tolbert, 100 N.J. Super. 350 (Cty. Ct. 1968). [57 N.J. at 14-15]
In view of the foregoing, consent is not required to the taking of a blood sample, but the taking of such sample must be done in a medically acceptable manner and environment and without force or violence or the threat of same.
In addition to Macuk and Blair other cases have upheld the taking of blood samples without the express consent of a defendant. See State v. Kraft, 134 N.J. Super. 416, 418 (Cty. Ct. 1975); State v. Amaniera, 132 N.J. Super. 597, 601 (Cty. Ct. 1974); State v. Tolbert, 100 N.J. Super. 350, 357 (Cty. Ct. 1968); and cf. State v. McMaster, 118 N.J. Super. 476 (App. Div. 1972).
*545 It may also be noted that the Legislature made no substantive change in N.J.S.A. 39:4-50.2 from the time of the decisions in Macuk and Blair, notwithstanding the enactment of L. 1977, c. 29, which merely added language to subsection (e) of N.J.S.A. 39:4-50.2. Under these circumstances it can be assumed that the Legislature is thoroughly conversant with its own legislation and the judicial construction placed thereon. Cf. State v. Sands, 76 N.J. 127, 137, n. 1 (1978); In re Keogh-Dwyer, 45 N.J. 117, 120 (1965), and Caldwell v. Rochelle Park Tp., 135 N.J. Super. 66, 74 (Law Div. 1977).
We are aware that on April 24, 1978 (subsequent to argument in this case) Senate Bill S-49 (2dOCR) of 1978 was referred back to committee in the Assembly. This bill would amend various sections of Title 39 in part to expressly incorporate certain aspects of the holding of State v. Macuk and extend the implied consent law. That bill would also have made additional amendments to the law, including expressly granting immunity from civil or criminal liability to medical personnel and to hospitals or other medical facilities taking breath, blood or urine samples and participating in the administering of such tests, as long as they were performed in a medically acceptable manner. However, the pendency of unadopted amendatory bills, legislative inaction, or even ultimate failure of passage of this unadopted bill, does not change and has no effect on the holding of Macuk, and does not provide a basis for any controlling inference as to legislative intent. See Donaldson v. Bd. of Ed., 65 N.J. 236, 240-241 (1974); Moore v. Mercer Cty. Bd. of Freeholders, 39 N.J. 26, 29-30 (1962); Kendall Park Chapter of Deborah v. New Brunswick, 159 N.J. Super. 249, 256 (App. Div. 1978), and Hilton Acres v. Klein, 64 N.J. Super. 281, 294 (App. Div. 1960), mod. on other grounds, 35 N.J. 570 (1961).
Reversed and remanded for trial in the municipal court.
NOTES
[1] We note this director was the same individual who was the subject of State v. McMaster, 118 N.J. Super. 476, 478 (App. Div. 1972).