RESORTS INTERNATIONAL, INC., A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AND RESORTS INTERNATIONAL, HOTEL, INC., A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW JERSEY, PLAINTIFFS-RESPONDENTS, v. NJM ASSOCIATES, A NEW JERSEY LIMITED PARTNERSHIP, DOING BUSINESS AS THE NEW JERSEY MONTHLY, NJM PUBLISHING COMPANY, A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW JERSEY, AS A GENERAL PARTNER IN NJM ASSOCIATES, CHRISTOPHER LEACH, INDIVIDUALLY, AS EDITOR-IN-CHIEF OF NEW JERSEY MONTHLY AND AS A GENERAL PARTNER IN NJM ASSOCIATES, HENDRIX F. C. NIEMANN, INDIVIDUALLY AND AS PUBLISHER OF NEW JERSEY MONTHLY, MICHAEL ARON, INDIVIDUALLY AND AS EDITOR OF NEW JERSEY MONTHLY, MICHAEL DORMAN, AND JOHN COE, MARY DOE, STEVE ROE, AND OTHER INDIVIDUALS AS YET UNKNOWN, NAMES BEING FICTITIOUS, INDIVIDUALLY AND AS AGENTS, SERVANTS AND/OR EMPLOYEES OF NEW JERSEY MONTHLY, DEFENDANTS-APPELLANTS.

Argued January 11, 1982—Decided May 6, 1982.

*Alan M. Wallack* argued the cause for appellants (*Brener, Wallack & Hill*, attorneys; *Alan M. Wallack, Joseph C. Mahon* and *Guliet D. Hirsch*, on the briefs).

*Joel H. Sterns* argued the cause for respondents (*Sterns, Herbert & Weinroth*, attorneys; *Joel H. Sterns* and *Michael D. Loprete*, of counsel; *Mark D. Schorr* on the brief).

The opinion of the Court was delivered by

PASHMAN, J.

This interlocutory appeal concerns the extent to which the New Jersey Shield Law, *N.J.S.A.* 2A:84A–21, protects against compelled disclosure of sources, editorial processes and other confidential information in a libel action. In *Maressa v. New Jersey Monthly, et al.,* 89 *N.J.* 176 (1982), decided today, we hold that the Shield Law privilege not to disclose such information in a libel action is absolute. Defendants in this case did not waive the privilege. We therefore reverse the trial court order, 180 *N.J.Super.* 459, compelling disclosure of privileged information.

I

This action began after an article entitled "Surrender in Atlantic City" appeared in the May 1979 issue of *New Jersey*

*Monthly* magazine. The article describes the hearing process through which plaintiff Resorts International, Inc. (Resorts) obtained the first permanent license from the Casino Control Commission to operate a gaming casino in Atlantic City.

The thrust of the article was that the hearings concerning Resorts' application were a charade designed to make Resorts "look clean," despite "a plethora of evidence" establishing that it was a "mismanaged, unscrupulous, mob-tainted company with the morals of an alley cat." The article described Resorts' alleged attempts to secure statewide referenda on casino gambling, its alleged contribution of $250,000 to the pro-casino campaign, and its alleged payment of retainer fees and campaign contributions, some unlawful, to lawyers and politicians involved in the casino law's drafting and passage. The article's author, Michael Dorman, concluded that "it would be an insult to the intelligence of anyone present to pretend that these proceedings resembled serious regulatory deliberations."

On May 30, 1979 an attorney for Resorts wrote to the editor-in-chief of New Jersey Monthly to demand an immediate retraction of what he described as Dorman's "scurrilous, libelous and defamatory" article. The letter identified approximately 40 paragraphs that allegedly contained inaccurate statements. No retraction was published.

This action was filed in the Superior Court, Law Division on April 18, 1980, on behalf of Resorts and its wholly owned subsidiary, Resorts International Hotel, Inc. The suit named as defendants New Jersey Monthly, NJM Publishing Company, Dorman, the magazine's publisher, editor-in-chief, editor, and several John Does. Conceding that it was a public figure for purposes of the litigation, Resorts contended that defendants published the allegedly libelous statements in wilful or reckless disregard of the truth. The defendant's answer raised separate defenses including opinion as fair comment, good faith and lack of malice.

In June 1980 plaintiffs served upon the defendants interrogatories and demands for the production of documents. Plaintiffs

sought a wide range of information, including all notes, memoranda, rough drafts, editorial comments, source names, telephone bills and other documents concerning the allegedly libelous article. While answering some questions and producing some documents, defendants responded to many other requests by stating that the information sought was "privileged."

Plaintiffs moved on September 11, 1980 to compel discovery. Hearings were held on the motion beginning October 17, 1980. On May 5, 1981 the trial judge issued a letter opinion holding that defendants had waived their Shield Law privileges by asserting separate defenses. Following additional argument, the trial judge made separate determinations with respect to each item sought. An order implementing those decisions was entered on June 18, 1981. On June 22, 1981 Dorman was ordered to produce pages from his diaries, with the names of confidential sources masked pending further court orders.

On July 1, 1981 the trial judge entered an amended opinion on the reporters' privilege issues. The order from which this appeal was taken, giving defendants 30 days to answer plaintiffs' discovery requests, was entered on July 7, 1981, and stayed on August 5, 1981 pending interlocutory appeal. We granted direct certification on September 29, 1981.

## II

In *Maressa* we hold that the New Jersey Shield Law, *N.J.S.A.* 2A:84A–21, establishes an absolute privilege in libel actions not to disclose sources, editorial processes and other confidential information involved in publication of an alleged libel. The notes, memoranda, rough drafts, editorial comments, sources and other information sought by plaintiffs in this case are included in the Shield Law's protection.

We also find no evidence of waiver. As explained in *Maressa*, publication constitutes a waiver only as to those specific materials published. (At 183–196). The fact that defendants in this case responded to the trial court orders by providing addi-

tional information, including the names of about 20 sources who had not requested confidentiality, does not waive the privilege as to any other information. Nor did defendants' assertion of separate defenses constitute waiver of Shield Law Protection. (At 194).

The trial court order is therefore reversed. Plaintiffs are free to pursue their claim in accord with the law set down in *Maressa* and in this opinion. As we acknowledged in *Maressa*, the Shield Law makes it more difficult for libel plaintiffs to prove their case. However, the Legislature has decided to provide increased protection for news media at the expense of potential libel plaintiffs. This is a legislative choice that the United States and New Jersey Constitutions permit.

SCHREIBER, J., dissenting.

I hereby dissent for the reasons expressed in my dissenting opinion filed in *Maressa v. New Jersey Monthly*, 89 *N.J.* 176, 202 (1981).

*For reversal*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, HANDLER, POLLOCK and O'HERN—6.

*For affirmance*—Justice SCHREIBER—1.