**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5194-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALBERT ZAYAT,

    Defendant-Appellant.

_____

          Argued May 24, 2018 — Decided July 31, 2018

          Before Judges Simonelli and Haas.

          On appeal from Superior Court of New Jersey,
          Law Division, Bergen County, Municipal Appeal
          No. 009-03-17.

          Kevin T. Conway argued the cause for
          appellant.

          Ian C. Kennedy, Special Deputy Attorney
          General/Acting Assistant Prosecutor, argued
          the cause for respondent (Dennis Calo, Acting
          Bergen County Prosecutor, attorney; Michael R.
          Philips, Special Deputy Attorney General/
          Acting Assistant Prosecutor, of counsel and on
          the brief).

PER CURIAM

Following the denial of his motion to suppress the results of a blood sample, defendant Albert Zayat pled guilty to driving while intoxicated (DWI), N.J.S.A. 39:4-50. He was sentenced to a nine-month driver's license suspension, and ordered to participate in the Intoxicated Driver Resource Center Program for a period of twenty-four hours and install an ignition interlock device for the period of suspension and six additional months after the suspension ended. The court also imposed the appropriate fines, assessments, surcharges, and costs.

On appeal, defendant raises the following argument:

[POINT I]

Based on the Fourth Amendment of the United States Constitution and [Art. I, ¶ 7] of the New Jersey Constitution, the results of the blood sample in this case must be suppressed.

We reject this argument and affirm.

I.

We derive the following facts from the evidence adduced at the motion hearing. At approximately 8:00 p.m. on December 30, 2015, River Edge Police Officer Joseph Sanfilippo responded to the scene of a motor vehicle accident on Kinderkamack Road. When he arrived, defendant was standing outside a black sports utility vehicle (SUV) and bleeding from a hand laceration. Sanfilippo saw that the SUV had sustained significant front-end damage from

striking a parked vehicle in the rear on the east side of Kinderkamack Road. Both vehicles were facing north and were partially on the sidewalk. Behind the two vehicles, Sanfilippo saw a second vehicle on the lawn of a house that had rear-end damage. He determined that the SUV had struck the first vehicle, propelling it onto a lawn, and the SUV continued forward, striking the second vehicle. The other two vehicles were unoccupied, and defendant was the only person involved in the accident.

Sanfilippo spoke with defendant, who was unable to provide information about what happened. Defendant asked Sanfilippo about the parked car being struck and looked confused when the officer said he struck them. Sanfilippo had to explain to defendant what happened. While speaking with defendant, Sanfilippo "smelled an odor of alcohol coming from him[,]" and saw that defendant was "swaying back and forth, slightly slurring his words[,]" "seemed incoherent in what he was saying[,]" and had bloodshot eyes. Sanfilippo did not conduct field sobriety tests due to defendant's condition and because an ambulance was on route to the scene.

Defendant admitted to Sanfilippo that he had been at a restaurant in Hackensack where he consumed one to two beers. Based on Sanfilippo's observations of defendant and the accident scene, his smell of the odor of alcohol, and defendant's admission to

A-5194-16T2

consuming alcohol, he determined defendant was impaired due to intoxication from the consumption of alcohol.

Emergency Medical Technician Joseph Schlossberg testified that he responded to the accident scene and saw that defendant was coherent and responsive, but there was a smell of alcohol on his breath. The ambulance transported defendant to Hackensack University Medical Center (HUMC), followed by Sanfilippo. Schlossberg testified there was a smell of alcohol in the ambulance during the transport that was not there before Schlossberg arrived at the accident scene.

Defendant arrived at HUMC at approximately 8:40 p.m. Emergency room (ER) triage nurse Krystyna Koryzma saw defendant in the triage area, took his information, and learned he had been in a motor vehicle accident and had a laceration to his right hand.

Sanfilippo testified that he asked defendant for his consent to a blood draw and to sign a consent form, and advised him of his right to refuse. Defendant refused and said he did not want his blood drawn. The ER nurse who eventually drew defendant's blood was not present at the time of this exchange. Sanfilippo made no further attempts to have defendant consent to a blood draw, and did not threaten him in any way if he refused to consent. He also did not advise the ER nurse who eventually drew defendant's blood

A-5194-16T2

that defendant refused to consent to a blood draw, or direct that nurse to draw defendant's blood for police use.

Defendant was moved from the triage area into another area of the ER at 9:10 p.m. Koryzma testified it was HUMC's protocol to insert an IV line in ER patients in case the patient needed a CT scan or IV medications or fluids. It was also HUMC's practice to draw blood on all ER patients immediately after inserting the IV line, and testing for alcohol was part of the normal blood draw process for patients involved in motor vehicle accidents regardless of whether the patient appeared intoxicated.

According to Koryzma, at 9:24 p.m., a doctor ordered blood work on defendant, and at approximately 9:45 p.m., ER nurse Tsamchoe Siphur inserted an IV line in defendant. Defendant's blood was drawn. Although HUMC's records do not indicate who drew the blood or when it was drawn, Koryzma testified that based on her practice and experience, she believed Siphur drew defendant's blood. The blood test results returned at 10:03 p.m. indicated defendant had a blood alcohol content (BAC) of 0.177%.

Defendant began complaining of chest pain and was placed on a cardiac monitor. At approximately 11:00 p.m., a doctor ordered blood work on defendant, and a CT scan of defendant's head and chest, EKGs, and a chest x-ray. Defendant's BAC did not change.

The doctor recommended that defendant remain overnight in the hospital for further treatment.

Sanfilippo testified that he saw an ER nurse attempt to draw blood from defendant and heard defendant say to her, "no, we don't have to do that[,]" and indicated he wanted to leave the hospital. Sanfilippo then advised defendant he was under arrest for DWI and he would transport defendant to police headquarters if he left the hospital. Sanfillipo testified that he intended to perform an Alcotest on defendant at headquarters and did not advise or threaten him that he would be incarcerated if he left HUMC.

According to Sanfilippo, defendant decided to remain at HUMC. The ER nurse then drew defendant's blood. Defendant did not ask her to stop or indicate the blood was being drawn without his consent. Prior to his leaving HUMC, defendant was moved to a cardiac section. The next morning, defendant left HUMC against medical advice.

Defendant's ex-wife, Donna Zayat, with whom he still resided, testified that defendant phoned her and said he was at the hospital and had a car accident. She became "frantic on the phone[,]" "proceeded to be in a panic[,]" and asked defendant "my God, are you okay[?]" Defendant said, "I have a cut on my hand, I'm fine[,]" and told her "to calm down." She immediately drove to HUMC. She was panicked when she got there. She went into the ER

and saw defendant in the corridor with "just a bloody finger." He told her, "calm down, I'm fine." When she saw that defendant was not receiving any treatment, she mentioned he had an aortic aneurysm.

According to Donna, a nurse came over, put a tourniquet on defendant's arm, and said she had to take blood. Defendant said, "I don't want my blood taken, I'm fine. I just really want to get out of here." A police officer was there, but she did not recall his name and was not present when he asked if defendant would consent to a blood test. The nurse then spoke to the police officer, but Donna did not hear their conversation. The officer then told defendant "if you don't let her take your blood, I'm taking you with me, you're under arrest." Defendant then consented to the blood draw. Donna admitted that the nurse and police officer did not say defendant's blood was being drawn for the officer's purpose. Defendant then had and EKG and CT scan.

The police obtained defendant's HUMC records pursuant to a Dyal[1] subpoena.[2] Defendant filed a motion to suppress his blood

---

[1]  State v. Dyal, 97 N.J. 229 (1984).

[2]  Sanfilippo was not questioned about his affidavit in support of the subpoena, and the affidavit was not admitted into evidence. Accordingly, we decline to consider the affidavit, which defendant included in his appendix, as well as all references to it in his merits brief. See N.J. Div. of Youth & Family Servs. v. M.M., 189

test results. He argued Sanfilippo lacked probable cause to arrest him for DWI, his blood was drawn without his consent at Sanfilippo's request for investigative purposes, not for medical reasons, and he was coerced into submitting to the blood draw by Snafilippo's threat to arrest him if he did not comply.

Following a hearing, the Municipal Court judge denied the motion. The judge found Sanfilippo and Koryzma credible, and also found Sanfilippo's testimony about what occurred in the ER more credible than Donna's testimony. The judge determined Sanfilippo had probable cause to arrest defendant for DWI, and the officer did not direct the ER nurse draw defendant's blood for investigative purposes or coerce defendant into consenting to the blood draw by threatening him with arrest if he did not consent. The judge found defendant guilty of DWI and imposed the sentence noted supra. Defendant then entered a conditional plea to DWI, reserving his right to appeal the denial of his motion.[3]

On appeal to the Law Division, Judge James J. Guida denied defendant's motion to suppress and imposed the same sentence. In a comprehensive June 20, 2017 written opinion, the judge found

---

N.J. 261, 278 (2007); Soc'y Hill Condo Ass'n v. Socy' Hill Assocs., 347 N.J. Super. 163, 177-78 (App. Div. 2002).

[3] Defendant had also been charged with careless driving, N.J.S.A. 39:4-97. That charge was held in abeyance and is not part of this appeal.

Sanfilippo's testimony credible, and concluded he had probable cause to arrest defendant for DWI based on his observations at the scene of the accident, his training and experience in DWI detection, and the totality of the circumstances.

Citing State v. Ravotto, 169 N.J. 227 (2001), Judge Guida acknowledged a warrant is required for the police to obtain a blood sample from a defendant. However, citing on State v. Burns, 159 N.J. Super. 539, 544 (App. Div. 1978), the judge noted:

> when a hospital employee obtains a blood sample in the course of administering medical care, "consent is not required to the taking of a blood sample, but the taking of such sample must be done in a medically acceptable manner and environment and without force or violence or the threat of same."

Citing Dyal, 97 N.J. at 240, the judge noted:

> When a blood sample of a potential or actual DWI defendant is taken by medical personnel solely for medical purposes, the State is entitled to obtain those medical records by subpoena. . . . It is proper for the [S]tate to obtain a defendant's BAC test results from a healthcare provider as long as the police show a reasonable basis, based on objective facts known by them at the time of the event or discovered within a reasonable time thereafter, that the operator was intoxicated.

Judge Guida reviewed the evidence and found that defendant's blood was drawn for medical purposes at the direction of treating physicians, not law enforcement for investigative purposes. The

judge found defendant was not coerced into consenting to the blood draw under threat of arrest if he did not consent. Rather, the judge found it more believable and probable that Sanfilippo advised defendant he would be arrested and transported to police headquarters if he left the hospital, not if he refused to submit to the blood draw.

Judge Guida determined that defendant's situation differed from Ravotto, in that defendant was not physically restrained, the blood sample was obtained in connection with medical treatment and not for investigative purposes, and defendant did not continue to object after initially telling the ER nurse that he did not want his blood drawn. The judge noted that defendant submitted to the blood draw and remained in the hospital for several hours, consented to treatment and further testing, and left the hospital against medical advice after Sanfilippo left the hospital, assuring he would not be transported to police headquarters or detained.

Lastly, Judge Guida found that unlike in Ravotto, there was no doubt that defendant's blood was drawn for medical purposes independent of the law enforcement request, satisfying the "independent source" doctrine, even if there was a Fourth Amendment violation. This appeal followed.

On appeal, defendant argues Judge Guida erred in denying his motion to suppress because Sanfilippo lacked probable cause to arrest him for DWI. We disagree.

Our review of a trial court's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). As our Supreme Court has held:

> Appellate review of a motion judge's factual findings in a suppression hearing is highly deferential. We are obliged to uphold the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings. Those factual findings are entitled to deference because the motion judge, unlike an appellate court, has the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy."
>
> [State v. Gonzales, 227 N.J. 77, 101 (2016) (citations omitted).]

We will "reverse only when the trial court's determination is so clearly mistaken that the interests of justice demand intervention and correction." State v. Gamble, 218 N.J. 412, 425 (2014) (citation omitted). However, we owe no deference to the trial court's legal conclusions or interpretations of the legal consequences flowing from established facts, and review questions of law de novo. State v. Watts, 223 N.J. 503, 516 (2015). Applying

the above standards, we discern no reason to reverse the denial of defendant's motion.

To make an arrest for DWI, the arresting officer need only have "'reasonable grounds to believe' that the driver was operating a motor vehicle in violation [of N.J.S.A. 39:4-50]." State v. Moskal, 246 N.J. Super. 12, 21 (App. Div. 1991) (alteration in original) (quoting Strelecki v. Coan, 97 N.J. Super. 279, 284 (App. Div. 1967)). Reasonable grounds can be based solely on the officer's observations. See State v. Liberatore, 293 N.J. Super. 580, 589 (Law Div.) (holding that "observational evidence" may be sufficient to prove "a defendant guilty beyond a reasonable doubt of DWI."), aff'd o.b., 293 N.J. Super. 535 (App. Div. 1996). "[A] conviction for driving while under the influence of alcohol will be sustained on proofs of the fact of intoxication--a defendant's demeanor and physical appearance--coupled with proofs as to the cause of intoxication--i.e., the smell of alcohol, an admission of the consumption of alcohol, or a lay opinion of alcohol intoxication." State v. Bealor, 187 N.J. 574, 588 (2006); see also State v. Morris, 262 N.J. Super. 413, 421-22 (App. Div. 1993) (sustaining conviction for DWI based on proofs of defendant's slurred speech, loud and abusive behavior, disheveled appearance, red and bloodshot eyes, together with the strong odor of alcohol were sufficient to sustain a DWI conviction); Moskal, 246 N.J.

Super. at 20-21 (sustaining conviction for DWI based on proofs of defendant's flushed face, "drooping and red" eyes, the strong odor of alcohol, and an admission of drinking established probable cause for arrest).

Here, defendant was involved in a serious accident. He was unable to provide information about what happened and looked confused when Sanfilippo told him he struck two parked vehicles. Sanfilippo smelled an odor of alcohol coming from defendant, and saw defendant swaying back and forth, slightly slurring his words and seemed incoherent in what he was saying. Defendant also had bloodshot eyes and admitted to consuming alcohol. We are satisfied there was sufficient credible evidence to support Judge Guida's finding that Sanfilippo had probable cause to arrest defendant for DWI based on his training and experience, observational evidence, and the totality of the circumstances.

## III.

Defendant argues that Judge Guida erred in denying his motion to suppress because his blood was drawn without his consent and for investigative purposes, not medical reasons, and he was coerced into submitting to the blood draw under threat of arrest if he did not comply.

We have considered this argument in light of the record and applicable legal principles and conclude it is without sufficient

merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2). We affirm substantially for the reasons Judge Guida expressed in his cogent written opinion.  We are satisfied there was ample credible evidence supporting the judge's finding that defendant's blood was drawn for medical purposes at the direction of treating physicians, not law enforcement for investigative purposes, and defendant was not coerced into submitting to the blood draw under threat of arrest if he did not comply.  Sanfilippo testified, credibly, that he did not direct the ER nurse to draw defendant's blood for police use or threaten defendant in any way if he refused to consent to a blood draw.  Sanfilippo merely advised defendant he was under arrest and would be transported to police headquarters if he left the hospital, not if he refused to submit to the blood draw.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5194-16T2