212 N.J. Super. 343 (1986)
515 A.2d 242
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JUAN FIGUEROA, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 5, 1986.
Decided August 28, 1986.
*345 Before Judges FRITZ, BRODY and BAIME.
Michael R. Justin argued the cause for appellant.
Lynne M. O'Carroll, Assistant Prosecutor, argued the cause for respondent (Alan A. Rockoff, Middlesex County Prosecutor, attorney).
The opinion of the court was delivered by FRITZ, P.J.A.D.
Defendant was convicted of the crime of death by auto (N.J.S.A. 2C:11-5). He asserts on this appeal that the results of a chemical test of his blood sample were improperly admitted in evidence because of a violation of the physician-patient privilege and because there was insufficient proof of the scientific acceptability of the equipment utilized in the testing. He argues as well that the "blood-alcohol test results at the hospital" were too remote to have been admissible and that the trial judge erred in charging the "statutory criteria of the drunk-driving statute." He urges that admission into evidence of statements of the "brain-injured accused" taken at the hospital should have been excluded and that the charge was inadequate and erroneous. Only the physician-patient issue causes us concern. It is on account of this concern, and the influence on the matter by State v. Dyal, 97 N.J. 229 (1984), that we are remanding for further proceedings.
We turn first to the physician-patient issue and preliminarily discuss the contention of the State that the privilege does not *346 apply because of the interaction between N.J.S.A. 2A:84A-22.5 and N.J.S.A. 26:2B-24. The former of these expressly denies the privilege "as to information which the physician or the patient is required to report to a public official or as to information required to be recorded in a public office," except in a situation not here apposite. The latter, in a Chapter of the statutory law establishing a Division of Alcoholism (Division) and aiming, in part at least, at the formulation of a "comprehensive State plan for the treatment of intoxicated persons and alcoholics" (N.J.S.A. 26:2B-11), requires that the Division
shall, in cooperation with the State, municipal and local police, and the Division of Motor Vehicles, conduct tests for alcohol in the bodies of automobile drivers and pedestrians who die as a result of and within 4 hours of a traffic accident, and in automobile drivers who survive traffic accidents fatal to others.
This issue was not raised in Dyal, perhaps because, as we are persuaded, it would have been unavailing. N.J.S.A. 26:2B-24 appears in a lengthy, multi-section chapter which is entitled "Rehabilitation of Alcoholics, Etc." Since not only acts in pari materia but also related acts not strictly in pari materia should be examined to ascertain the legislative meaning, the section in question must be read in context with the balance of the legislation. Brewer v. Porch, 53 N.J. 167, 174 (1969). "[T]he words of a statute must not be considered to exist in a vacuum, without reference to relevant policy considerations as they are expressed in the whole act, or without regard for the words of [the] balance of the statute." In re Boardwalk Regency Casino License Application, 180 N.J. Super. 324, 346 (App.Div. 1981), mod. o.g. and aff'd 90 N.J. 361 (1982), appeal dism. sub. nom. Perlman v. Attorney General of New Jersey, 459 U.S. 1081, 103 S.Ct. 565, 74 L.Ed.2d 927 (1982).
Thus considered, N.J.S.A. 26:2B-24 is obviously only to assure the integrity of the data collection process and to forward the goals of the study of alcoholism. It is not of a kind to which the public policy goals of the physician-patient privilege should defer. See State v. Dyal, supra. We are satisfied that N.J.S.A. 2A:84A-22.5 is intended to remove obstacles which *347 might stand in the way of, for instance, investigating probable criminal activity (N.J.S.A. 2C:58-8), preventing the spread of communicable disease (N.J.S.A. 26:4-15 and see N.J.S.A. 26:4-41), preventing in advance or reducing the number of preventable motor vehicle accidents (N.J.S.A. 39:3-10.4) or preventing the continuing course of child abuse (N.J.S.A. 9:6-8.10; and see Kaszerman v. Manshel, 176 N.J. Super. 132 (App.Div. 1980)), rather than to enhance a subsequent prosecution of any miscreants therein involved.
We consider next the State v. Dyal physician-patient privilege problem which is obviously present here and which defendant argues. The matter before us is remarkably similar to Dyal. Its fundamental differences are that in this case defendant was unconscious when taken to the hospital and could not, therefore, give the consent which appears in Dyal. Unfortunately, although Dyal had been argued in the Supreme Court when this case was tried, it had not yet been decided. The trial judge in commendable fashion relied on the unreported Appellate Division opinion in Dyal and on the restrictive application of the privilege statute in State, In the Interest of M.P.C., 165 N.J. Super. 131 (App.Div. 1979). In a decision for which we lay no fault at his feet in light of the opinions on which he then relied, he determined that the physician-patient privilege "would give way to [the] superior interest" of the declared strong public policy against drunken driving. Days after the decision to admit the record of the blood tests was made at the trial of the matter before us, the opinion in Dyal was delivered.
Dyal dissects, examines, diagnoses and prescribes respecting the tension existing between the competing policies dealing with the drunken driver on one hand and the physician-patient privilege on the other. We have the benefit of this analysis; the trial judge did not. Without it, he accepted a stipulation of the parties detailing the events as they were thought to be relevant toward solution of the issue. Basically this stipulation was little more than the police report of the accident. It is obvious from the most cursory reading of Dyal that factors, *348 some very subjective, significant in reaching a result accordant with the Dyal accommodation of these competing interests, are to be found outside of the constraints of an official police report. We are satisfied that justice to the State and to defendant can be best reached by a consideration of those factors, all pursuant to the instruction of Dyal.
Accordingly, we are directing a remand much in the manner in which a remand was ordered in Dyal, 97 N.J. at 242. Either party may introduce further evidence toward the end of a factual determination by the trial judge respecting the Dyal criteria for the obtaining of a subpoena. Obviously, the end here to be served is not the obtaining of a subpoena, but rather an answer to this question: If here the evidence available to the police officer at the time of the accident or within a reasonable time thereafter (97 N.J. at 240) had been presented at the time of the testing to a judicial officer who applied the Dyal criteria, would a subpoena for the record of the blood tests have issued? If the trial judge answers that question in the affirmative, the judgment shall stand as affirmed. If the trial judge answers that question in the negative, the judgment shall be set aside and a new trial shall be ordered.[1] We pause to make clear the fact that our desire to assure compliance with the direction of Dyal does not signify a tacit present conclusion on our part that the evidence is not or should not be admissible. Nor do we limit the trial judge to consideration of direct evidence only. Circumstantial evidence is, of course, as relevant to this factual issue as to any other.
Defendant complains that there was insufficient proof "of the scientific acceptability and reliability of the Automatic Clinical Analyzer" (ACA) utilized in the blood testing. It is apparent from the evidence in this case, including the warning of the manufacturer, that certain substances may interfere *349 with the operation of the ACA. Accordingly, we are in no position to say and we do not say that in any given case the State is relieved of the burden of proof imposed in and explained by Romano v. Kimmelman, 96 N.J. 66, 90 (1984), with respect to scientific evidence yielded by the ACA. However, in this case, on findings reported after hearing testimony respecting the ACA and its acceptability, the trial judge recorded his satisfaction as to its acceptability and reliability. We are satisfied these findings could have been reasonably reached from sufficient credible evidence in the record. State v. Johnson, 42 N.J. 146, 162 (1964). The issue lacks merit.
The judge charged the jury on the presumptions in N.J.S.A. 39:4-50.1 regarding blood alcohol percentages. Defendant urges that this was error. Inasmuch as a charge of death by auto was here concerned and not a charge of violating the motor vehicle statute, probably the statute should not have been charged. But the issue of intoxication was present in the case and we are not prepared to reverse on this ground without more. It is notable that immediately after this section of the charge, the trial judge told the jury,
You must remember that a violation of the driving while under the influence motor vehicle statute does not mean that the Defendant is guilty of the offense charged in this case. This is a not a drunken driving case. The issue is whether the Defendant caused the death of the decedent by operating his motor vehicle recklessly. The inferences that I have mentioned to you before are not binding upon you in this case. You are free to accept or reject them. It is your decision to determine whether or not the Defendant was intoxicated and if so to what degree.
If there was error in charging the statute, it did not in our judgment have any tendency to produce an unjust result and was harmless. State v. Macon, 57 N.J. 325 (1971).
Defendant argues that his hospital bed statements were in circumstances such as should be considered custodial interrogation and, having been secured without Miranda (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) warnings, should not have been admitted into evidence. On organized, detailed findings, the trial judge concluded that *350 there was no custodial interrogation requiring Miranda warnings, that there was no overbearing or overreaching in any interrogation, that the statements were voluntary, and finally that the evidence convinced him of the reliability and trustworthiness of the statements made by defendant. He denied the motion to exclude the statements. Here again we are amply satisfied that the findings of the trial judge might reasonably have been reached on sufficient credible evidence in the whole record. State v. Johnson, supra. There was no error in the admission of the statements.
Finally, defendant attacks the charge, asserting that it was "wholly inadequate and erroneous." A review of the charge as a whole, State v. Hipplewith, 33 N.J. 300, 317 (1960), satisfies us that the issue is clearly without merit. R. 2:11-3(e)(2).
The matter is remanded to the trial court for further proceedings consistent with the foregoing.
NOTES
[1] As was the case in Dyal, the fact that the police did not obtain court approval shall not affect admissibility of the blood test results in this case.