213 N.J. Super. 534 (1986)
517 A.2d 1204
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ALFRED P. PHILLIPS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1986.
Decided November 12, 1986.
*537 Before Judges FURMAN, DREIER and STERN.
Roger F. Mahon, Hunterdon County Prosecutor argued the cause for appellant (Roger F. Mahon, of counsel; Roger F. Mahon and Dawn M. Solari, Assistant Prosecutor, on the brief).
Allan J. Nodes, Deputy Attorney General argued the cause Amicus Curiae (W. Cary Edwards, Attorney General of New Jersey, attorney; Allan J. Nodes and Steven Pasternak, of counsel and on the brief).
Thomas A. Pavics argued the cause for respondent (Bernhard, Durst & Dilts, attorneys; Thomas A. Pavics, on the brief).
*538 The opinion of the court was delivered by DREIER, J.A.D.
The State, by leave granted, has appealed from an order of the Law Division on an interlocutory appeal[1] sustaining the exclusion of certain testimony from medical personnel on the basis of the physician-patient privilege.
Defendant, the Police chief of Raritan Township, was injured December 10, 1985 in a one-car accident and later treated at Hunterdon Medical Center. Thereafter as a result of a subpoena duces tecum authorized by a municipal court judge, the Medical Center's records concerning defendant's blood test were secured employing the procedure established in State v. Dyal, 97 N.J. 229 (1984). Following the review of the blood test, defendant was charged with driving while under the influence of alcohol, N.J.S.A. 39:4-50. The Law Division in an earlier appeal denied defendant's motion to suppress the medical records and blood tests, and we denied leave to appeal.
The trial was commenced June 5, 1986 before the judge of the municipal court of an adjoining township. At an adjourned *539 hearing the State sought to introduce testimony from the medical personnel of the emergency room at Hunterdon Medical Center, two physicians and a nurse, that they detected an odor of alcohol on defendant's breath, observed instances of inappropriate behavior, and were of the opinion that he appeared intoxicated. After holding a hearing under Evid.R. 8, the municipal court judge ruled that the observations and opinions of the medical personnel were protected by the physician-patient privilege and were thus inadmissible. Nevertheless, he preserved the excluded testimony on the record pursuant to R. 1:7-3, pending further appeals.
The Law Division judge affirmed in a letter opinion, specifically noting that the testimony should not have been taken below[2] and that the record could have been supplemented pursuant to R. 3:23-8(a) if the testimony later was found to be unprivileged.[3] The Law Division judge in a written opinion further determined that as a matter of law State v. Dyal should not be extended to encompass the facts before him. We disagree. We determine that the matters sought to be introduced well may have not fallen within the physician-patient privilege, but even if they did, the circumstances of this case *540 justified the application of State v. Dyal and thus the admission of the testimony.
The first police officer to arrive at the accident scene testified that defendant told him that his accident was caused by his striking a deer, forcing his car to leave the road. As a result of his injuries he was immediately transported to the Hunterdon Medical Center without being administered either a breathalyzer test or psychomotor test at the accident site or at headquarters. He arrived at the emergency room at 8 p.m., was treated there by the two doctors and nurse on duty, and had a head wound stitched by a third doctor. He had a broken rib, a severe forehead laceration, and a possible concussion. The hospital personnel informed defendant that in order to treat his injuries they required a blood sample to be analyzed for blood alcohol content. Despite his serious injuries, defendant initially refused to give a blood sample and refused to be admitted to the hospital for treatment. It was not until 11:25 p.m., approximately four hours after the accident, that defendant agreed to be admitted to the hospital and to supply the blood sample. At 11:55 p.m. defendant's blood alcohol level was determined to be .131%. He attacked the reading in the municipal court through witnesses who testified that he did not appear to be intoxicated.
A prosecutor's investigator assembled facts concerning defendant's conduct prior to the accident. A bartender at a local tavern testified that defendant was there from 5:30 p.m. to 7:00 p.m. and consumed three one-and-one-half ounce drinks of vodka over ice and that defendant was not under the influence of alcohol when he left. A passerby who saw defendant immediately after the accident testified that he did not smell alcohol. None of the people interviewed by the investigator from the accident scene noticed an odor of alcohol on defendant or concluded that he was intoxicated, although one person described him as "dazed" and another described him as "combative." Two officers who saw defendant at the accident scene, one of whom accompanied defendant to the hospital, testified *541 that they did not smell alcohol on his breath and he did not appear to be intoxicated.
In their preserved testimony, the doctors testified that defendant's behavior in initially refusing medical attention was sufficiently inappropriate that they needed to determine his blood alcohol content to differentiate medically between the effect of alcohol and the effect of the trauma. The physicians had ample opportunity to observe defendant in the emergency room. The nurse extracted blood for the analysis and, therefore, also had an opportunity for close observance. During the time the medical personnel observed and treated defendant, the police officers were also present. The officer who accompanied defendant with the rescue squad testified that he "stayed with him [defendant] most of the time at the bedside while he was being treated." The other officer corroborated this testimony stating that the first officer "was at the hospital pretty much the entire time the Chief was."

I
The State first claims that the medical personnel's observations concerning intoxication and odor of alcohol were not confidential communications protected by N.J.S.A. 2A:84A-22.1. The definition section, N.J.S.A. 2A:84A-22.1(d), provides:
"Confidential communication between physician and patient" means such information transmitted between physician and patient, including information obtained by an examination of the patient, as is transmitted in confidence and by a means which, so far as the patient is aware, discloses the information to no third persons other than those reasonably necessary for the transmission of the information or the accomplishment of the purpose for which it is transmitted. [Emphasis added].
Remaining close to defendant out of concern, the officer's presence at defendant's bedside apparently was consensual. Had defendant intended to maintain confidentiality when he spoke to the doctors or when the blood sample was taken by the nurse, he should have asked the officer to move away, since the officer's presence was not necessary for treatment or transmittal purposes. This is not the same as a third person inadvertently *542 overhearing a communication intended to be confidential. See People v. Decina, 2 N.Y.2d 133, 138 N.E.2d 799, 157 N.Y.S. 2d 558, 569 (1956) (presence of a police guard at a hospital room where defendant was being treated did not destroy confidentiality), and compare State v. Sugar, 84 N.J. 1, 12-13 (1980) (illegal eavesdropping on confidential attorney-client communication).
If in fact the accompanying officers were present at all times when defendant was conferring with the physicians and nurse, and were also close enough to defendant that any odor of alcohol would be observable by them, then, under the statutory definition, the communication between the defendant and medical personnel would not have been privileged. Certainly, defendant's behavior in jumping from the stretcher as he was brought to the emergency room and his publicly-expressed desire to leave, audible to any third parties present could not be considered as "transmitted in confidence" to the medical personnel. Likewise, if the odor of defendant's breath was freely observable by the officers or others in attendance, testimony concerning this observation also would remain unprivileged.[4]
Defendant's refusal of treatment raises a related threshold question. N.J.S.A. 2A:84A-22.1(a) defines "patient" as
a person who, for the sole purpose of securing preventative, palliative, or curative treatment, or a diagnosis preliminary to such treatment, of his physical or mental condition, consults a physician or submits to an examination by a physician.
In the case before us, defendant after having his head wound stitched by another physician, apparently attempted to reject *543 treatment by the physicians whose testimony was excluded by the trial judge. In the appropriate case the judge must determine whether defendant was a "patient" within the meaning of the definition just quoted. If not, the privilege would never arise, rendering moot the other issues discussed herein. See State in the Interest of M.P.C., 165 N.J. Super. 131, 137 (App. Div. 1979).
From the testimony preserved in the municipal court and notwithstanding the general statement that an officer was present at all times, we would have questions concerning who was present as each statement was made or action was taken by defendant, and whether defendant was in fact the physicians' "patient" when they made their observations. Therefore, how much, if any, of the observations of the medical room personnel would be admissible under a strict application of N.J.S.A. 2A:84A-22.1(d) is unclear. Ordinarily we would remand this matter so that the municipal court judge could expand the Evid.R. 8 hearing and then redetermine the issue of admissibility, applying the statutory standard as interpreted here. We need not reach that issue, however, since our reading of State v. Dyal, supra, requires a more expansive rule of admissibility in a case such as the one before us.

II
For the purpose of this portion of our opinion we will assume that defendant made certain statements to the physicians or nurse[5] out of the hearing of third parties or that their observations of him were under conditions that could not be observed by others. In such event, as was the case in State v. Dyal, the State would be forced to acknowledge that the information secured by the medical personnel would "satisfy *544 the literal requirements of the [physician-patient privilege] statute," 97 N.J. at 237. In Dyal, the Supreme Court stated:
The State, contends, however, that the privilege must yield to the public interest for the disclosure of relevant facts in the prosecution of drunken driving cases. No one can doubt that the clear public policy of this State is to rid the highways of drunken drivers....
This case requires us to balance that policy with the statutory privilege protecting communications between patient and physician. The purpose of the privilege is to permit patients to disclose facts necessary for diagnosis and treatment, ... a purpose that the privilege achieves by protecting the patient from the adverse consequences that would follow from disclosure.
The inevitable effect of allowing the privilege, nonetheless, is the withholding of evidence, often the most reliable and probative kind, from the trier of fact. To the extent that the privilege is honored, it may therefore undermine the search for truth in the administration of justice.... Because the privilege precludes the admission of relevant evidence, it is restrictively construed. [97 N.J. at 237]
The court further noted in Dyal that, absent the privilege, there was no State or federally protected constitutional right arising from the privilege against self-incrimination to refuse the involuntary taking of a blood sample. Id. at 238; Schmerber v. California, 384 U.S. 757, 771-72, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908, 920 (1966). Since a lesser intrusion is involved, there could be no constitutional right to prevent the State's examination of the odor from one's breath. And certainly there is no restriction upon a disclosure of the content of statements made by a defendant, if no constitutional or statutory privilege applies. Evid.R. 63(7).
The court in Dyal imposed procedural safeguards concerning the disclosure of the results of the blood test. It required a probable cause hearing before the issuance of a subpoena duces tecum, and imposed on defendant the obligation to move to suppress within 30 days of the initial plea to any resulting charge based upon the result and disclosure of the information. Id. 97 N.J. at 240-241. A similar procedure should be followed here if the privilege is to be avoided. But, since the evidence sought to be introduced in this case is testimonial as opposed to documentary, we must draw clearer lines concerning what portion of a physician's report or testimony *545 should be admissible. As noted earlier, evidence of testimony of medical personnel concerning communications where there was no expectation of confidentiality may be freely admitted. This information may include any sensory observations by the medical personnel which were observable by others. But, notwithstanding our decision that evidence of medical personnel's observations of intoxication may be revealed under appropriate circumstances, there need not be a wholesale invasion of the privilege. The privilege itself is limited to communications which the physician or the patient reasonably believed
to be necessary or helpful to enable the physician to make a diagnosis of the condition of the patient or to prescribe or render treatment therefor. [N.J.S.A. 2A:84A-22.2].
However, if a patient is somewhat incoherent, slurs his speech when speaking to the physician, exhibits watery eyes, imbalance, an odor of alcohol or like symptoms, and a physician based upon such well-known indicia[6] is able to make a differential diagnosis of intoxication, he need not reveal the content of other statements made that could prove embarrassing to the patient if disseminated publicly. Physicians' reports and testimony may well contain a mixture of such observations, some made privately and with the expectation of confidentiality. Traditionally-protected confidential statements concerning a patient's medical or mental health can still be protected, without precluding the admission of observations and diagnosis of intoxication, in the same manner as a court makes in camera determinations of confidentiality in other areas. See In the matter of Myron Farber, 78 N.J. 259, 273-74, cert. den. sub. nom. New York Times Co. v. New Jersey, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978); State v. Alston, 212 N.J. Super. *546 644, 648-649 (App.Div. 1986); State v. McBride, 213 N.J. Super. 255, 270-271 (App.Div. 1986). The court can redact a physician's or hospital record or suitably instruct a physician as to the proper limits of testimony. As was noted in the context of the marital privilege in State v. Briley, 53 N.J. 498, 506 (1969):
Since rigid adherence to the letter of the privileges promotes the suppression of truth, they should be construed and applied in sensible accommodation to the aim of a just result.
From our review of the preserved testimony of the medical personnel, we determine that in this case there is no necessity for an in camera inspection of documents or further instruction to the witnesses, since the information need not remain privileged. Further, the municipal court judge has concluded the taking of evidence and has merely withheld determination pending this appeal. If, however, the matter is to be reopened for any reason, any additional evidence concerning medical records or testimony shall be in accordance with this opinion.

III
The State also contends that defendant may be found to have "opened the door" to the medical personnel's testimony by examining others present concerning the lack of symptoms of intoxication. Where both the officer and physician have observed the same events, it would be unfair to permit the officer to testify as to the absence of an odor of alcohol, yet preclude the medical personnel from testifying to its presence. Cf. State v. Knight, 63 N.J. 187, 192-93 (1973). There could be no impediment to such testimony in any event, since, as noted in Part I of this opinion, such public statements would not be privileged. The subject of curative admissibility need not be explored here, since we have in Part II of this opinion determined that the disputed testimony is otherwise admissible under State v. Dyal, supra.
The order of the Law Division affirming the exclusion of the medical testimony is reversed, and this matter is remanded to *547 the municipal court for further proceedings in accordance with this opinion.
NOTES
[1] Defendant argued below that there is no procedural authorization for the appeal and, therefore, it should have been dismissed. He claimed there and here that R. 3:24(a) authorizes the State or defendant to appeal to the Law Division only "from an interlocutory order entered before trial" in the municipal court. The order in question was entered during trial but before judgment, with the proceedings stayed to permit review. We agree that there should be no general authorization for review of rulings at on-going municipal court trials, since such procedure would place too great a burden upon both the municipal courts and Law Division. See passim, 1979 Report of the Supreme Court Criminal Practice Committee, 103 N.J.L.J. 413-414, 417-418. Compare R. 2:3-1(b)(5), implementing N.J.S.A. 2C:1-2d, under which the State may seek leave to appeal "to the appropriate appellate court from ... an interlocutory order entered before, during or after trial...." [Emphasis added]. The Law Division judge determined that he would hear the matter notwithstanding defendant's procedural argument. We assume that this relaxation of the rules was accomplished since the matter was both one of public importance and involved an evidence question that could not otherwise be considered. R. 1:1-2. Defendant is correct in noting that R. 3:24(a) does not specifically authorize interlocutory appeals of municipal court orders. In extraordinary cases only, the rule may be relaxed to preserve substantial questions where there would be double jeopardy consequences.
[2] We also question this procedure, since R. 1:7-3 mandates the preservation of such testimony except where "the witness is privileged." Although we determine here that the physician-patient privilege is not applicable to the testimony under review, and thus the error was harmless, we point out that the privilege of confidentiality cannot be thwarted by requiring the preservation of testimony under R. 1:7-3 in violation of a privilege. Moreover there may have been an acquittal, which would preclude subsequent review on double jeopardy grounds.
[3] As provided in R. 3:23-8(a), in order to supplement the record on review in the Law Division, the trial judge would have been required to find that evidence offered by the defendant was improperly excluded, that the State offered rebuttal evidence to discredit such supplemental evidence, or that the record was partially unintelligible or defective. State v. Hardy, 211 N.J. Super. 630, 633-34 (App.Div. 1986). Such was not the case here, and thus the medical testimony could not have been received initially in the Law Division.
[4] This is not to say that in appropriate circumstances where the odor of breath or statements concerning a desire to leave the hospital were revealed solely to medical personnel engaged in treatment, the privilege could not encompass such physician's observations. We do not necessarily read the privilege as being confined solely to oral or written communications between physician and patient. A physician's impressions secured by any of his senses may be privileged against disclosure depending upon whether there was an expectation of confidentiality.
[5] Any applicable privilege should also protect confidential statements made to a treating nurse, acting either as an agent under the supervision of a doctor or in her professional capacity. See N.J.S.A. 2A:84A-22.2(c)(ii), and State v. Raymond, 139 Vt. 464, 431 A.2d 453, 456-57 (1981).
[6] Even a lay witness lacking special expertise may give opinion evidence concerning whether an individual is intoxicated. State v. Guerrido, 60 N.J. Super. 505, 511 (App.Div. 1960). Although in this case the communications negated this intention and related to defendant's refusal of treatment, any rule protecting confidentiality must encompass a wider spectrum of comments.