219 N.J. Super. 85 (1987)
529 A.2d 1039
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSEPH M. SPANN AND ANITA SISTRUNK, DEFENDANTS.
Superior Court of New Jersey, Law Division (Criminal), Salem County.
Decided February 13, 1987.
*86 John E. Bergh, Asst. Pros. for State (Frank J. Hoerst, III, Prosecutor).
Emerson L. Darnell, for defendant Spann.
Saul H. Segan for defendant Sistrunk.

OPINION
TELSEY, P.J.Cr.
The issue of first impression here is whether or not the results of a Human Leukocyte Antigen test (HLA) can be admitted into evidence in a criminal trial. This court finds that HLA test results are admissible in criminal cases.
Defendants Joseph M. Spann and Anita Sistrunk, former corrections officers at the Salem County Jail, are charged with Sexual Assault, in violation of N.J.S.A. 2C:14-2(c)(3), and Official *87 Misconduct, in violation of N.J.S.A. 2C:30-2(a). The indictment arises out of an incident at the jail where it is alleged that Defendant Spann had sexual intercourse with an inmate. The State now seeks to admit into evidence the results of an HLA test. The test results disclose a 96.55% probability that Spann is the father of the child born to the inmate. The defendants contend that although HLA test results have been received in civil actions to prove paternity, they are inadmissible in criminal actions because the State is held to a higher burden of proof in criminal cases. This court disagrees.
In Romano v. Kimmelman, 96 N.J. 66, 80 (1984), our Supreme Court held that, "the results of scientific tests are admissible at a criminal trial only when they are shown to have sufficient scientific basis to produce uniform and reasonably reliable results and will contribute materially to the ascertainment of truth." See also, Frye v. United States, 293 F. 1013 (D.C. Cir.1923) (recognized as the seminal case on the admissibility of scientific evidence). Reliability must be demonstrated by showing that the scientific technique has gained general acceptance within the scientific community. State v. Johnson, 42 N.J. 146, 170-71 (1964). However, "scientific acceptability need not be predicated upon a unanimous belief or universal agreement in the total or absolute infallibility of the techniques, methodology or procedures that underlie the scientific evidence." Romano, 96 N.J. at 80.
A proponent of scientific evidence may prove its general acceptance and thereby its reliability:
(1) by expert testimony as to the general acceptance, among those in the profession, of the premises on which the proffered expert witness based his or her analysis;
(2) by authoritative scientific and legal writings indicating that the scientific community accepts the premises underlying the proffered [evidence];
(3) and by judicial opinions that indicate the expert's premises have gained general acceptance. [State v. Kelly, 97 N.J. 178, 210 (1984).]
The admissibility of evidence from relatively new scientific techniques has been addressed in a number of recent criminal *88 cases in this State. See State v. Kelly, 97 N.J. 209-11 (1984) (holding that evidence relating to the battered woman's syndrome has a sufficient scientific basis to produce uniform and reasonably reliable results); Romano v. Kimmelman, 96 N.J. 66, 82 (1984) (breathalyzer tests are scientifically reliable); State v. Hurd, 86 N.J. 525, 529 (1981) (hypnotically refreshed testimony admissible when subject to strict safeguards ensuring reliability of the hypnotic procedure); State v. Prudden, 212 N.J. Super. 608, 613-18 (App.Div. 1986) (morphological footprint comparison evidence admissible for exclusion of suspects); State v. Figueroa, 212 N.J. Super. 343, 348-49 (App.Div. 1986) (not error to admit blood test results derived from use of the Automatic Clinical Analyzer); But, Cf., State v. Cavallo, 88 N.J. 508, 516 (1982) (evidence of psychological traits of a rapist held inadmissible); State v. Blome, 209 N.J. Super. 227, 238 (App.Div. 1986) (evidence derived from sodium amytol tests inadmissible because not established to be scientifically reliable); State v. Conway, 193 N.J. Super. 133, 169-71 (App.Div. 1984) certif. den., 97 N.J. 650 (1984) (discourse analysis seeking to determine intent of speaker held scientifically unreliable).
In the instant case, Dr. Leslie Johnson, an expert qualified in the field of genetic testing, testified that HLA testing enjoys widespread acceptance in her field and that such acceptance is documented in scientific journals. Furthermore, although there are no reported cases in New Jersey holding that HLA test results are admissible in criminal trials, they are admissible in paternity actions whenever they "establish the positive probability of parentage." N.J.S.A. 9:17-51(e); See also, J.H. v. M.H., 177 N.J. Super. 436, 438-441 (Ch.Div. 1980). Accordingly, this court finds that the criteria set forth in State v. Kelly have been satisfied by the State and that the HLA test results are reliable.
Defendant's contention that a higher standard of admissibility applies in criminal cases is without merit. In Windmere, Inc. v. International Ins. Co., 208 N.J. Super. 697, 713 (App. *89 Div. 1986), the court concluded that the trial judge did not abuse his discretion in admitting spectrographic (voiceprint) evidence in a civil case, but expressed no opinion as to the admissibility of voiceprint evidence under similar circumstances in a criminal case. Id. at 713 n. 12. There, the Appellate Division took note of State v. Cary, 99 N.J. Super. 323, 333 (Law Div. 1968), wherein it was held that "the need for a high degree of scientific acceptance, and particularly reliability, is vital when a criminal case is involved where the individual's freedom or, in fact, his life, may be at stake." While this court would agree that a high degree of reliability is necessary before scientific evidence can be admitted in a criminal case, it must nonetheless conclude that the standard of proof beyond a reasonable doubt has no place in a Rule 8 hearing on admissibility. If the proffered evidence is rooted in scientific techniques that have gained general acceptance among the scientific community and is relevant, i.e. "having any tendency in reason to prove any material fact, Evid.R. 1(2), then the evidence should be admitted." The jury may then decide to give the evidence its appropriate weight.
In State v. Beard, 16 N.J. 50, 58-59 (1954), our Supreme Court held that the results of blood-grouping tests were admissible, even though 46% of the population have blood type O, because when viewed in conjunction with other evidence presented by the State, it tended to corroborate the State's case to support the inference that the accused committed the crime charged. See also, State v. Kelly, 207 N.J. Super. 114, 121-24; "Admissibility, Weight, and Sufficiency of Blood-Grouping Tests in Criminal Cases," 2 A.L.R. 4th 500 (1980).
Here the HLA test results establish a 96.55% probability that Defendant Spann is the father of the inmate's child, which corroborate the inmate's testimony that Spann had sexual intercourse with her. Accordingly, the State's motion to admit the HLA test results into evidence is granted.