239 N.J. Super. 33 (1990)
570 A.2d 1003
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MARILYN BODTMANN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1989.
Decided February 22, 1990.
Before Judges PETRELLA, O'BRIEN and HAVEY.
Susan W. Sciacca, Special Deputy Attorney General, Acting Assistant Prosecutor, argued the cause for appellant (John G. *34 Holl, Assistant Attorney General In Charge, Acting Bergen County Prosecutor, attorney; Susan W. Sciacca, of counsel and on the letter brief).
Richard D. Kraus argued the cause for respondent (Barrett & Kraus, attorneys; Richard D. Kraus, on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
In this driving while intoxicated (DWI) case, by leave granted, the State appeals from an order suppressing the results of a blood test performed on defendant and the hospital records relating thereto. We reverse and remand.
At approximately 5:50 p.m. on December 11, 1988, Patrolman George Hall was assigned to investigate a serious automobile accident on Kinderkamack Road, immediately north of Soldier Hill Road in Oradell. The three vehicles involved were heavily damaged and four persons were injured, two of whom, including defendant, were transported to Pascack Valley Hospital in Westwood. As a result of his investigation, Officer Hall ascertained that defendant was driving northbound on Kinderkamack Road when she drifted across the center line and sideswiped a southbound vehicle, after which she continued driving north in the southbound lane colliding head-on with a second southbound vehicle. Some time after her arrival at the hospital, defendant's blood was drawn and tested for alcoholic content.
On December 12, 1988, Officer Hall was instructed by Captain Spraengel to return a telephone call to Lois Dickey, the emergency room nursing supervisor at Pascack Valley Hospital. During the ensuing conversation at about 1:40 p.m., Nurse Dickey informed Officer Hall that a routine blood test had been performed on defendant on December 11, 1988, which revealed her blood alcohol content as .24%. According to Officer Hall, Nurse Dickey "further advised that upon admission for treatment in the Emergency Room, on December 11, 1988, Ms. *35 Bodtmann at first denied consuming any alcoholic beverages. However, when Ms. Bodtmann was advised of her blood alcohol reading, she admitted to having consumed Screwdrivers."
Upon receipt of this information, Officer Hall applied to the Westwood Municipal Court for a subpoena duces tecum, pursuant to the procedure recommended by the Supreme Court in State v. Dyal, 97 N.J. 229, 240, 478 A.2d 390 (1984). In support of his application, Officer Hall filed his affidavit setting forth his training and experience, the information obtained from Nurse Dickey, and the results of his investigation at the scene as to defendant's driving and concluded:
Concerning the aforementioned circumstances related to this accident, this writer believes that the consumption of alcohol by Ms. Bodtmann might have been a contributing factor in this accident, therefore I request the issuance of a subpoena by the Westwood Municipal Court to be served on Pascack Valley Hospital for the medical records of Marilyn M. Bodtmann. The subpoena is to include information pertaining to the taking of any blood and urine samples from Ms. Bodtmann upon her arrival at the hospital on December 11, 1988 some time after 5:50 p.m.
The Westwood Municipal Court judge issued the requested subpoena on December 13, 1988.
On January 24, 1989, defendant moved[1] to suppress the results of the blood test and all verbal or written statements made or furnished by defendant to doctors and staff at the hospital on the ground of a violation of the patient and physician privilege, N.J.S.A. 2A:84A-22.1 et seq. Defendant's motion was originally heard on March 14, 1989. At that time, the parties stipulated that the municipal court judge had issued the subpoena on the basis of Officer Hall's affidavit and that defendant had operated her vehicle which was involved in the accident on the night in question.
*36 At the request of the motion judge, Nurse Dickey was called to testify. According to the nurse, she was not present in the emergency room when defendant arrived from the scene of the accident. Her first knowledge of defendant came from a report she received the following morning in the nursing office as the supervisor for emergency services.[2] Defendant had been released before Nurse Dickey received any information. Some time that morning, according to Nurse Dickey, she received a message that the Oradell police had called asking about a blood alcohol test. When she returned that call she asked to speak to the officer "who had been involved in the accident" since she had not been given a name. As a result, Officer Hall called her. She said she had asked him whether they had done a breathalyzer at the scene, and then confirmed to him that a blood alcohol had been done at the hospital. However, she pointed out that it had been done for medical diagnostic purposes and not for legal purposes. She said Officer Hall told her the police could subpoena the records.
Nurse Dickey conceded that she told the officer the result of the blood alcohol test, but, since it was done for diagnostic purposes, it had not been sent to the police laboratory. According to her testimony, Officer Hall seemed surprised that there had been a positive finding. In response to his suggestion that he would subpoena the results, she told him there was written on the blood slip "For medical purposes only not for legal purposes."
The matter was again heard on April 11, 1989 concerning the aspect of the motion seeking to suppress statements allegedly made by defendant about her drinking, which were reported to Officer Hall. Thereafter, the motion judge entered the order under review, which suppressed the results of the blood test and the hospital records relating thereto, but denied defendant's *37 motion to suppress any verbal or written statements made by her to the doctors and staff, without prejudice to defendant's right to object to the admission of those statements at the municipal court trial. On the State's motion, we granted leave to appeal on May 24, 1989, heard oral argument on October 30, 1989, and we now reverse and remand.
The order of the motion judge was based upon her written opinion of April 13, 1989, which was supplemented by letter of May 12, 1989, pursuant to R. 2:5-6(c). In her opinion, the motion judge recognized that in order to obtain the subpoena duces tecum for the hospital records containing blood alcohol test results, in spite of the patient's interest in confidentiality, the Dyal court required:
... investigating police to establish a reasonable basis to believe that the operator was intoxicated, a showing that may be established by objective facts known at the time of the event or discovered within a reasonable time thereafter. [97 N.J. at 240, 478 A.2d 390.]
The motion judge stated the question to be:
... whether probable cause existed for the issuance of the subpoena where the primary basis for the police officer's belief that defendant was operating her vehicle while intoxicated was derived from information provided by medical personnel at the treating hospital allegedly in violation of defendant's statutory patient-physician privilege pursuant to N.J.S.A. 2A:84A-22.2.
Since she concluded that the affidavit of Officer Hall did not contain sufficient objective facts to establish probable cause as to defendant's intoxication, but was based upon the information obtained from Nurse Dickey in violation of the patient/physician privilege, the motion judge suppressed the results of the blood alcohol test and the hospital records relating thereto.
In reaching this result, it is evident that the motion judge read the Dyal requirement to mean that the police must have "probable cause" as required for the issuance of a search warrant under both the Federal and State Constitutions.[3] Citing State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987), the *38 motion judge said: "The necessity of finding probable cause for the issuance of a warrant is of constitutional dimension." She concluded:
If this court were to sanction police reliance on what are clearly privileged communications as the sole basis for establishing probable cause for the issuance of a Dyal subpoena, the result is easy to predict: a complete breakdown in police investigative procedures and effort in prosecuting drunk driving cases. If all that is required is a telephone call to or from the local treating hospital to obtain evidence of intoxication to support the issuance of a subpoena, what will be left of the cherished `right of the people to be secure in their persons, houses, papers and effects'? N.J.Const. (1947) Art. I, par. 7. This court believes that our Constitution demands more.
We believe the trial court erred in requiring the investigating police to establish probable cause for the issuance of the subpoena.
The error is understandable. The Supreme Court selected a "subpoena duces tecum" as the vehicle to obtain the records. Normally, a subpoena duces tecum is issued by the clerk of the court or an attorney under R. 1:9-1, and is attacked by a motion to quash, R. 1:9-2. The method established to attack the issuance of the subpoena duces tecum is by a motion to suppress with a "cf." to R. 3:5-7(a).[4] The Dyal Court said further:
Given the protection accorded blood test results by the statutory privilege, we believe that a subpoena for records of those tests should be treated as the functional equivalent of a search warrant. [97 N.J. at 241, 478 A.2d at 396.]
Once more this statement has a "cf." to State v. Hall, 93 N.J. 552, 557-559, 461 A.2d 1155, cert. den. 464 U.S. 1008, 104 S.Ct. 526, 78 L.Ed.2d 709 (1983), noting that the Hall court approved investigative detention upon a showing of "a reasonable and well-grounded basis to believe" that the suspect may have committed a crime.
The Hall court found that an application to detain a suspect for the purpose of conducting a lineup must be considered as *39 "the functional equivalent of an application for [] issuance ... of a search warrant," id. at 557-558, 461 A.2d 1155, finding that the constitutional interests upon which investigatory detentions and conventional searches and seizures may intrude, are similar. However, the Hall court then addressed the question of whether constitutional rights against unreasonable searches and seizures are adequately protected by investigatory detentions "that are judicially authorized upon less than probable cause," id. at 560, 461 A.2d 1155, observing that our courts had approved comparable investigatory detentions on less than probable cause, citing In Re Fingerprinting of M.B., 125 N.J. Super. 115, 122, 309 A.2d 3 (App.Div. 1973), and other cases. Finally, the Hall Court concluded that an evidential finding of probable cause to believe that a particular individual has committed a crime is not an absolute prerequisite for judicial authorization of an investigatory detention. 93 N.J. at 561, 562, 461 A.2d 1155.[5]
We believe the Dyal court also intended that a subpoena duces tecum for the records of a blood alcohol test may be issued on less than probable cause since the Dyal court requires the investigating police to establish a "reasonable basis to believe that the operator was intoxicated."[6] This appears to *40 be even less than the "reasonable and well grounded basis to believe" requirement in Hall by the absence of the words "well grounded."
Our conclusion that less than probable cause is required for the issuance of a Dyal subpoena is fortified by the settled law that a driver arrested with probable cause to believe he or she is intoxicated has no constitutional right to prevent the involuntary taking of a blood sample, provided the sample is taken in a medically acceptable manner, at a hospital or other suitable health care facility. Schmerber v. California, 384 U.S. 757, 771-772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908, 920 (1966). If the Dyal court had intended to require the police to establish probable cause to believe a driver is intoxicated in order to obtain a subpoena duces tecum for test results, it would have said so. Thus, the motion judge imposed a greater burden upon the police by requiring them to have "probable cause," rather than "a reasonable basis to believe" as required by State v. Dyal. For that reason, the order suppressing the hospital records containing the test results is reversed and the matter is remanded for reconsideration.
The procedural posture in this case is different than in State v. Dyal, where the results of the blood test had been received into evidence. In this interlocutory appeal, the charges against defendant are pending untried in the municipal court. The State suggests that the subpoena duces tecum for the hospital records, including the blood alcohol test results, is for investigatory purposes, such as the investigatory detention in State v. Hall. While the State's brief is not particularly clear on this point, it concludes with the sentence, "Investigations must not be thwarted simply because the information could not be admitted *41 in its original privileged form at a subsequent trial." Thus, the State seems to agree that the test results would be inadmissible at defendant's trial as a violation of the patient/physician privilege, but that such inadmissible evidence may be used to support the issuance of the subpoena duces tecum. The State has not explained what investigative purpose will be served by its obtaining the hospital records containing the blood alcohol test results if those results are not admissible into evidence at a subsequent trial. If the purpose of the record is simply to encourage a thorough investigation because of knowledge of the blood alcohol reading, the police were already aware of that reading from Nurse Dickey.
The motion judge reads State v. Dyal to cloak a violation of the patient/physician privilege in the mantle of a violation of defendant's constitutional right to be free of unreasonable searches and seizures. However, evidence seized pursuant to a defective search warrant or without a search warrant, is inadmissible under the exclusionary rule because of the violation of defendant's constitutional rights. However, the statutory patient/physician privilege is not one of constitutional dimension.
We read State v. Dyal as an effort to accommodate the patient/physician privilege and the strong public policy of this State to rid the highways of drunken drivers. 97 N.J. at 237, 478 A.2d 390. In reciting the evolution of the privilege, the Court notes that it is purely legislative and has never been adopted by the Court. Id. at 235, 478 A.2d 390. Apparently, legislative proposals to eliminate the privilege with respect to drunken driving prosecutions have not been adopted.
It is not clear whether or not the Dyal court adopted the use of the subpoena duces tecum approach for the police to obtain blood test results to be used for investigative purposes only, such as investigative detentions in State v. Hall, as the State appears to argue. In support of its position the State cites cases such as United States v. Lefkowitz, 618 F.2d 1313 (9th Cir.1980), cert. den. 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 *42 (1980), where an estranged wife had revealed her husband's scheme to falsify accounting records, and the Court rejected defendant husband's motion to suppress based on a violation of the marital privilege since the wife had not "testified" against her husband, but simply provided information to support a search warrant. See also State v. Farber, 314 N.W.2d 365 (Iowa 1982).
In a patient/physician setting, the State cites Bryson v. State, 711 P.2d 932 (Okl.Cir.1985), cert. den. 476 U.S. 1121, 106 S.Ct. 1986, 90 L.Ed.2d 668 (1986). There, a rape victim escaped her assailant by biting his penis. In an effort to identify and apprehend the rapist, a police detective organized a volunteer effort to contact local physicians to see if any men had received treatment for an injured penis. The effort proved successful when a doctor came forward to report that a man had sought treatment for such an injury which he claimed to have received during oral sex with his girlfriend. Following up on this information, the police obtained a description, arrested the defendant Bryson, and photographed his injury. He was subsequently identified by the victim. Bryson protested the use of the information provided by his doctor, contending that it was obtained in violation of the patient/physician privilege and tainted all that the police subsequently learned. The Oklahoma Court of Criminal Appeals refused to extend the privilege in the manner urged by the defendant, noting that the privilege was testimonial and that the doctor had not testified. The court said:
... It is not a privilege enacted to protect an accused from police investigation, and certainly was not designed to preclude police from obtaining voluntary information from physicians. The State has an interest in the protection of its citizens from violent acts, and to insure the swift apprehension of criminals who commit such acts. Applying this statute in the broad manner urged by appellant would serve as a cloak for crime. [Id. 711 P.2d at 934.]
In her supplemental letter opinion the trial judge notes that these arguments, which she labels the "testimonial/documentary dichotomy," had not been presented to her. However, she notes that the patient/physician privilege is broader than the *43 spousal privilege which is purely testimonial in nature. She concluded that:
... Although not all wrongfully acquired records justify suppression of the evidence procured pursuant to a search warrant (or its functional equivalent, the subpoena duces tecum), the familiar doctrine of the `fruit of the poisonous tree' directs us to the appropriate disposition of the only issue in this case. This court has determined that the police cannot rely on the `tainted evidence' as the sole justification for obtaining records which are no more than the identical `objectionable facts' themselves.
It is questionable that the violation of the patient/physician privilege is a poisonous tree in a constitutional sense so as to bar the admission of evidence obtained by the investigating police as a result of receiving the blood alcohol results in violation of the patient/physician privilege. In any event, since this "testimonial/documentary dichotomy" was neither briefed nor argued before the trial judge, we will not decide it, but it may be presented to the motion judge on the remand herein ordered. We refer to it simply as support for our understanding that the State is contending that the Dyal procedure is limited to the police obtaining the test results for investigatory purposes.[7]
*44 While the Supreme Court in Dyal may have only intended the issuance of a subpoena duces tecum to obtain the results of a blood alcohol test, made pursuant to a patient/physician relationship, to be available to the police for investigatory purposes, as apparently argued by the State, the opinion can be read to mean that evidence obtained pursuant to such a subpoena, without establishing a reasonable basis to believe the driver was intoxicated, may be suppressed and not available for use at the subsequent trial, in the same manner as evidence seized pursuant to an unlawful search.
We recognize that obtaining blood to be tested for alcoholic content invades an individual's privacy and may intrude upon the same constitutional interests as a search and seizure. See State v. Hall, 93 N.J. at 558, 461 A.2d 1155.[8] However, as the Dyal court recognized, a driver arrested with probable cause to believe he is intoxicated has no constitutional right to prevent the involuntary taking of a blood sample. See State in the Interest of M.P.C., 165 N.J. Super. 131, 135, 397 A.2d 1092 *45 (App.Div. 1979). Furthermore, when police accompany a motor vehicle operator to a hospital where they have probable cause to believe he is intoxicated and a blood test is taken for diagnoses, the Dyal court held "no useful purpose would be served by requiring the police to obtain a second test for investigative purposes." 97 N.J. at 239, 478 A.2d 390.[9]
The Dyal opinion can certainly be read to suggest that granting a defendant's motion to suppress the subpoena duces tecum means that the test results may not be offered in evidence by the State at any subsequent trial. Although the Supreme Court may not have intended that result, since the inadmissibility of the evidence is as a result of a statutory privilege and not because of a violation of defendant's constitutional right to be free of unreasonable searches and seizures, both the motion judge here and our colleagues in deciding State v. Figueroa, 212 N.J. Super. 343, 515 A.2d 242 (App.Div. 1986), appear to read Dyal to mean that. In Figueroa, a blood alcohol reading had been admitted into evidence at the trial which had occurred before the Supreme Court's decision in the Dyal case. Judge Fritz observed that the Dyal court "dissects, examines, diagnoses and prescribes respecting the tension existing between the competing policies dealing with the drunken driver on one hand and the physician-patient privilege on the other." 212 N.J. Super. at 347, 515 A.2d 242. In Figueroa, the matter was remanded to the trial judge for a factual determination as to the evidence available to the police officer at the time of the accident or within a reasonable time thereafter, to determine whether a subpoena for the record of the blood test would have issued. If the trial judge answered the question in the affirmative, the judgment would stand. On the contrary, if *46 the trial judge answered in the negative, the judgment would be set aside and a new trial ordered. Id. at 348, 515 A.2d 242.
On the remand in this case, the question of the effect of the grant of a motion to suppress blood alcohol test results obtained pursuant to the subpoena duces tecum on the admission of those test results at the subsequent trial will be briefed by the parties and decided by the motion judge. If it is concluded that the effect is to suppress the test results from use at a subsequent trial, then a plenary hearing shall be conducted to ascertain "all the objective facts known at the time of the event or discovered within a reasonable time thereafter," at the time the subpoena duces tecum was issued.[10] We recognize that the parties stipulated that the motion was to be limited to an evaluation of the sufficiency of the information contained in the supporting affidavit of Patrolman Hall, since it was also stipulated that the subpoena duces tecum was issued by the municipal court judge solely on the basis of that affidavit.[11] However, the parties apparently have different concepts *47 of the result of the order suppressing the test results. The court is not bound by a stipulation as to a matter of law which is contrary to controlling law on the subject. State v. Elysee, 159 N.J. Super. 380, 384, 388 A.2d 254 (App.Div. 1978). Accordingly, at the remand hearing, all of the facts and circumstances shall be fully developed, if it is determined by the motion judge that granting the motion to suppress will result in suppression of the blood alcohol test results at the subsequent trial.
By way of example of the facts and circumstances to be developed, we believe testimony should be presented from Officer Hall as to the events at the scene of the accident. This may, of course, include statements that may have been taken from occupants of the other vehicles or other witnesses who may also be called to testify. Obviously, Officer Hall learned about defendant's erratic driving from others since it does not appear that he observed defendant driving the vehicle. We are not told whether any of the other drivers spoke with defendant and what observations they may have made of her, nor what observations hospital personnel may have made of her as in State v. Phillips, supra.
The motion judge found it significant that the affidavit of Patrolman Hall omits any reference to his observations of defendant at the scene. She said:
... [S]pecifically, there is no statement that defendant exhibited an odor of alcohol and no statement setting forth incriminating facts regarding defendant's coordination, balance or speech.
The judge further observed that defendant was not arrested at the scene, nor did police accompany her to the hospital, and no summons was issued for DWI until after the police learned the results of the test.
We first note that the Dyal court said:

*48 As a practical matter, the encounter between a patrolman and a drunken driver often arises in the context of an emergency. The officer may be alone, an accident may have occurred, people may be injured, and the public safety may be imperiled. [97 N.J. at 239, 478 A.2d 390.]
In some cases, the concerns of the moment may prevent investigating police from gathering facts needed to establish probable cause.
Consequently, law enforcement officers may be unable to accompany a motor vehicle operator to a hospital for the purpose of obtaining a blood test. As here, the public interest may require investigating officers to perform other duties at the scene of an accident. [97 N.J. at 240, 478 A.2d 390.]
That language could well describe the circumstances that occurred in this case. Yet, the officer's affidavit does not expand upon his activities at the scene nor the extent of the injuries to defendant.
In his affidavit Patrolman Hall claimed that the call from Nurse Dickey imparting the information as to the results of the blood alcohol test was unsolicited, whereas Nurse Dickey testified that she spoke to Officer Hall in response to an inquiry from the Police Department as to whether a blood alcohol test had been taken and, if so, the results. The motion judge made no finding of fact on this issue, although, in her written opinion, she seems to have accepted Nurse Dickey's version. The judge suggested that perhaps Captain Spraengel should be called to resolve this issue, but then did not pursue it. It would appear that if Nurse Dickey's version is correct and the police did seek the blood alcohol result, this inquiry may have been prompted by some circumstances suggesting that defendant was driving while intoxicated.[12] This question should be pursued.
Although the motion judge states that she called Nurse Dickey as the court's witness to determine whether the patient/physician privilege had been intentionally breached, she made no specific finding on this issue except by implication. Since Nurse Dickey was not present when the blood was drawn, she had no knowledge with respect to the circumstances surrounding *49 the alleged confidential communication. She testified that, "It's my understanding that it was written right on the blood slip, for medical purposes, only, not for legal purposes." The blood slip was not produced before the motion judge nor before us, nor was any witness produced with competent knowledge of the circumstances surrounding the taking of the blood. N.J.S.A. 2A:84A-22.2 provides in pertinent part that the privilege is only effective if "the judge finds that, (a) the communication was a confidential communication between patient and physician, and (b) the patient or the physician reasonably believed the communication to be necessary or helpful to enable the physician to make a diagnosis of the condition of the patient or to prescribe or render treatment therefor."
The motion judge called Nurse Dickey to determine if the privilege had been intentionally violated without inquiring as to its existence. In Dyal there was evidence that a hospital employee had explained to defendant that a blood test should be made in the event he needed a transfusion and, based upon that information, defendant allowed a blood sample to be taken. Here, no evidence was presented as to the circumstances surrounding the taking of defendant's blood. In a footnote to her opinion, the motion judge said, "There is no dispute that defendant was a patient and that the communications contained in the affidavit were confidential within the statutory definition of these terms, State v. Phillips, 213 N.J. Super. 534, 541-542, 517 A.2d 1204 (1986)."[13]
We recognize the time involved in such a full-scale presentation upon an application for a Dyal subpoena duces tecum. We also recognize that the question before the Law Division motion *50 judge was limited to an evaluation of what was before the municipal court judge when he issued the subpoena, which had been stipulated to be Patrolman Hall's affidavit. However, we conclude that, because of the apparent misunderstanding of the Dyal case and the probability that a suppression order has the drastic effect of precluding the admission of the test results at the subsequent trial, the matter should be remanded, not simply to ascertain what was before the municipal court judge when he issued the subpoena,[14] but what objective facts were actually known to the police at the time of the event, or discovered within a reasonable time thereafter, apart from the test results given to them by Nurse Dickey, if that is found to be a violation of the patient/physician privilege. We remand to the Law Division rather than the municipal court so that a factual record may be made.
Reversed and remanded to the Law Division judge for a plenary hearing, at which the State has the burden of establishing the reasonable basis to believe that defendant was intoxicated, upon objective facts known at the time of the event or discovered within a reasonable time thereafter, and without reference to the test results as disclosed to the police by Nurse Dickey, unless the judge concludes that the test results were not a confidential communication within the patient/physician privilege, or that the communication was not an intentional breach of the duty of nondisclosure by a physician or his agent or servant. We do not retain jurisdiction.
NOTES
[1] Summonses were issued to defendant on December 15, 1988, charging her with driving while intoxicated (N.J.S.A. 39:4-50) and reckless driving (N.J.S.A. 39:4-96). While it does not appear when defendant's initial pleas were entered to these charges, her motion to suppress made on January 24 was certainly within 30 days as required by State v. Dyal, supra, 97 N.J. at 241, 478 A.2d 390; cf. R. 3:5-7(a).
[2] In the course of recounting what had been told to her, Nurse Dickey testified that the Division of Youth & Family Services had been called. The significance of this fact is not apparent from the record.
[3] Fourth Amendment to the United States Constitution, and Article I, par. 7 of the New Jersey Constitution.
[4] "Cf." is an explanatory signal that means that the cited authority supports a proposition different from that in the text, but is sufficiently analogous to lend support.
[5] We may have inadvertently contributed to the problem when we characterized the hearing before the municipal court, seeking the issuance of a subpoena duces tecum, as a "probable cause" hearing in State v. Phillips, 213 N.J. Super. 534, 544, 517 A.2d 1204 (App.Div. 1986). In that case, the officer who took the defendant to the hospital did not smell alcohol on defendant's breath and did not think he was intoxicated. We are not told what evidence supported the issuance of the subpoena duces tecum, but the Law Division denied defendant's motion to suppress and we denied leave to appeal on that issue. Leave to appeal was granted to the State from an order of the Law Division sustaining the exclusion of certain testimony from medical personnel on the basis of the physician/patient privilege, which we reversed and remanded to the municipal court for further proceedings.
[6] We note, however, that the implied consent to a breath sample in N.J.S.A. 39:4-50.2 is triggered when a police officer "... has reasonable grounds to believe ...," but that section later refers to the person "arrested" which suggests probable cause. The Legislature made this clear when it provided that "... the arresting officer had probable cause to believe" when itemizing the elements the municipal court judge is required to determine by a preponderance of the evidence in order for a conviction to issue for refusing to submit to a chemical test of a person's breath. See N.J.S.A. 39:4-50.4a.
[7] For the first time at oral argument before us, the State suggested that the patient/physician privilege does not apply to DWI cases. State v. Dyal, supra, reviewed the issue in the setting of a criminal trial where the defendant was charged with death by auto, N.J.S.A. 2C:11-5. While the decision implies that the patient/physician privilege contained in N.J.S.A. 2A:84A-22.2 applies to DWI cases (N.J.S.A. 39:4-50), the State points out that the language of the statute begins:

Except as otherwise provided in this act, a person, whether or not a party, has a privilege in a civil action or in a prosecution for a crime or violation of the disorderly persons law or for an act of juvenile delinquency to refuse to disclose....
The statute does not specifically refer to a motor vehicle violation or DWI which fall into "the somewhat amorphous category of a quasi-criminal proceeding." State v. Emery, 27 N.J. 348, 353, 142 A.2d 874 (1958); see also State v. Dively, 92 N.J. 573, 586, 458 A.2d 502 (1983), where the Court decided that motor vehicle violations are within the category of "offenses" subject to the Double Jeopardy Clause. The State argues that DWI does not technically come within any of the legal proceedings listed in N.J.S.A. 2A:84A-22.2. The Dyal Court recognized that to the extent the patient/physician privilege is honored, it may undermine the search for the truth in the administration of justice and, therefore, as it precludes the admission of relevant evidence, it is to be restrictively construed. 97 N.J. at 237, 478 A.2d 390. Thus, if the statute is to be construed strictly, it does not by its language apply to a prosecution for a violation of the motor vehicle laws which, although quasi-criminal, are not prosecutions for a crime. See State v. Macuk, 57 N.J. 1, 9-10, 268 A.2d 1 (1970). However, this argument was also not addressed to the motion judge and therefore will not be decided by us. See State v. Mahoney, 226 N.J. Super. 617, 626, 545 A.2d 235 (App.Div. 1988). The issue may however be raised before the motion judge upon the remand herein ordered.
[8] There is no requirement in this State for consent to the taking of physical examples such as fingerprints, photographs, bodily examinations for identifying characteristics, drunkometer tests and blood tests. They are beyond the privilege of self-incrimination because nontestimonial in character. State v. Blair, 45 N.J. 43, 211 A.2d 196 (1965). Nontestimonial evidence is not subject to objection on either Fourth Amendment search and seizure grounds or Fifth Amendment self-incrimination basis." State v. Burns, 159 N.J. Super. 539, 543-544, 388 A.2d 987 (App.Div. 1978).
[9] The Court disapproved State v. Amaniera, 132 N.J. Super. 597, 334 A.2d 398 (Middlesex County Ct. 1974), which applied the patient/physician privilege to preclude disclosure of results of a blood test, although police were at the hospital at the time the blood sample was taken and were prevented from obtaining another sample only because defendant was receiving medical attention.
[10] If it is decided that granting the motion to suppress at this stage is not a ruling upon the admissibility of the test results at a subsequent trial, the decision then would be tantamount to quashing the subpoena. In such event, the State would have the right to make application for a new subpoena duces tecum supported by a more comprehensive affidavit of all of the objective facts known at the time of the event or discovered within a reasonable time thereafter, sufficient to establish a reasonable basis to believe that the operator was intoxicated.
[11] In that context, Patrolman Hall's affidavit may well have presented sufficient information to establish a reasonable basis to believe that defendant was intoxicated, apart from the information obtained from Nurse Dickey as to the blood alcohol reading. The affidavit reveals the erratic driving by defendant resulting in the two collisions, as well as the statement by defendant acknowledging she had been drinking screwdrivers. However, that admission was only made after defendant was informed of the results of her blood alcohol test and may have been part of the confidential communication within the patient/physician privilege for the purpose of obtaining appropriate treatment. This, of course, is impossible to determine in the absence of a plenary hearing. Additionally, Nurse Dickey testified that in her conversation with Officer Hall, "I believe I asked him whether they had done a breathalyzer at the scene and then confirmed that we had done a blood alcohol," before disclosing the reading. Nurse Dickey's inquiry about a breathalyzer may support an inference of a substantial reading.
[12] However, at oral argument before us, the assistant prosecutor insisted that Officer Hall had no such personal suspicion, presumably placing Officer Hall in the same position as Officer Horenko in the Dyal case.
[13] If defendant was not a "patient" as defined in N.J.S.A. 2A:84A-22.1(a), or the taking of the blood in a hospital emergency room setting was not a confidential communication as defined in the statute, the privilege does not exist and Dyal does not come into play. See State v. M.P.C., supra, 165 N.J. Super. at 137, 397 A.2d 1092, and State v. Burns, supra, concerning taking blood samples without consent. Of course, in these cases there was probable cause.
[14] The municipal court judge may also have understood the Dyal opinion to mean that issuance of the subpoena duces tecum was only for investigative purposes.